**Application of Clem Harrison STEPHENSON for admission to the Alaska Bar Association.**

**No. 1740.**

Supreme Court of Alaska.

June 25, 1973.

Edgar Paul Boyko of Edgar Paul Boyko & Associates, Anchorage, Robert F. Martin, Fairbanks, for appellant.

Mary F. LaFollette, Anchorage, for Alaska Bar Assn.

Before RABINOWITZ, C. J., and CONNOR and BOOCHEVER, JJ.

## OPINION

BOOCHEVER, Justice.

This appeal has been taken from a decision of the Board of Governors (the Board) denying Clem Harrison Stephenson's application for admission to the Alaska Bar Association under reciprocity

provisions.[1] Initially Stephenson's application was denied for failure to meet the character requirements, as well as his alleged failure to have graduated from a law school. After a subsequent hearing, a hearing officer made findings that applicant was of good moral character and concluded that he was entitled to admission. The Board of Governors approved the hearing officer's findings of fact but concluded that Stephenson was not entitled to be certified for admission to practice law in Alaska for the reason that

> he does not satisfy all of the requirements of Alaska Bar Rule II, section 2(f) for admission without examination, in that he is not a graduate of a law school accredited by the American Bar Association, or a graduate of any accredited law school.

Stephenson attended Oklahoma State University for two semesters and studied law under a "tutorship program" in his father's law office in Okemah, Oklahoma, from June 1931 to June 1934. As a "registered law student" he undertook the program as approved by the Oklahoma Bar Association. In applying to the Oklahoma bar he was required to list the subjects he had studied and the periods of time he had devoted to each. In 1934 he passed the Oklahoma bar examination and was admitted to practice in that state. He continued to practice law in Oklahoma until February 1969. Since March 1969 he has been a resident of Alaska.

Under the statutory requirements for admission to practice law in Alaska, Stephenson would be qualified for admission by reciprocity as AS 08.08.140(3) eliminates the requirement of graduation from a law school if the applicant "has been engaged in the active practice of the law for at least 10 years".[2] Alaska Bar Rule II, section 2(f) [3] differed from the statute in re-

---

1. Stephenson filed a petition for original relief by the supreme court under Supreme Court Rule 33, then applicable (now Appellate Rule 25). The court elected to treat this matter as an appeal from the decision of the Board. At various times applicants who had been denied admission to the bar by the Board have filed petitions for original relief to this court, petitions for review and appeals. Under our inherent and final authority to determine the standards for admission to the practice of law in this state, we have elected to take jurisdiction of this matter as an appeal. *See* Application of Brewer, 506 P.2d 676 (Alaska 1973).

2. AS 08.08.140(3) provides in pertinent part:

   > An attorney in good standing in the bar of another state or territory or the District of Columbia which admits members of the Alaska Bar to the practice of law shall be admitted without examination and otherwise upon substantially the same terms and conditions as are fixed in the jurisdiction from which he has come for the admission of attorneys from this state. As a prerequisite to admission to the Alaska Bar the board shall require an attorney to take and pass an examination, unless the applicant   .   .   .

   > (3) is a graduate of a law school accredited by the American Bar Association, or is a graduate of any law school if he received his degree before 1950 and began his legal studies before 1940, or has been engaged in the active practice of the law for at least 10 years,   .   .   .   .

3. Alaska Bar Rule II, section 2(f) specified:

   > To be certified as an attorney applicant for admission to practice law in Alaska, a person shall:

   > .       .       .       .       .

   > (f) If the attorney applicant has [1] passed a state bar examination, [2] engaged in the active practice of law for at least five out of the previous six years before filing the application, excluding time spent in the military service of the United States, [3] is a graduate of a law school accredited by the American Bar Association, or is a graduate of any accredited law school if he has been engaged in the active practice of law for at least ten years, and [4] meets the character requirements established by the Board, such applicant need not take an examination, provided he also satisfies the requirements of the foregoing subsections of this section.

quiring that the applicant "is a graduate of a law school accredited by the American Bar Association, or is a graduate of any accredited law school if he has been engaged in the active practice of law for at least ten years. . . ." Thus, even as to a 10-year practitioner, the bar rules require graduation from an "accredited law school".

█ Stephenson contends that his clerkship in his father's law office undertaken with the approval of the Oklahoma Bar Association, was tantamount to graduation from a law school accredited by the State of Oklahoma. While the term "accredited law school" which is undefined by the rules is vague, it is clear that a clerkship course of study could not be construed as coming within its definition. In fact, a principal reason for requiring graduation from an accredited law school would seem to be to distinguish such a requirement from that of a clerkship. In an accredited law school a student has the benefit of direct instruction under established curricula from professional teachers, as well as day-to-day association with other students. The exchange of ideas thus engendered adds greatly to the breadth of knowledge and understanding of the law, applicable ethics and techniques.

█ It would appear that the intent of the rule is to insure that any applicant has an adequate education without placing the impossible burden on the Board of examining the details of each applicant's day-to-day studies. By adopting the "accreditation requirement", the court has shifted the responsibility for daily supervision to the accrediting agencies and schools. If it relaxes the rule to include office study, the responsibility shifts back to the Board and the courts with resulting disparate standards and detriment to the quality of legal practitioners. The necessity of such "shorthand" tests requiring graduation from an accredited law school to insure the quality of the practicing bar, is ably discussed in Hackin v. Lockwood, 361 F.2d 499, 503 (9th Cir. 1966):

In determining whether Arizona's educational requirement is arbitrary, the fact that Abraham Lincoln and Dean Roscoe Pound had no, or little, formal legal schooling is interesting, but not conclusive. Prior to the time restrictions on admission to the bar became almost universal, for every successful lawyer who had had no formal legal training, there have been scores of incompetent lawyers practicing law, to the detriment of the public. No lawyer who has donated his time and effort to bar disciplinary proceedings can conclude otherwise.

Thus, while there is no evidence that Stephenson's education was in fact substandard, the public interest in seeing that all members of the bar have an adequate education is a valid basis for an "accredited schools" test, which insures that each applicant uniformly has performed the minimum required study. To adopt the position that law office study under an approved program would meet this test would do violence to the basic intent of the rule since there is no way to control that study in each individual office.

Moreover, it has been well established that educational standards such as those contained in the Alaska bar rule have a rational connection with an applicant's fitness to practice law. A lawyer is required to advise clients, present arguments and make representations to the court on a wide variety of subjects and it is essential that he have an adequate education in order properly to perform his functions. We cannot say that the requirement of graduation from an "accredited law school" has no rational relationship to the fitness to practice law.[4] By this means the state may be assured that attorneys have had suitable training by qualified instructors so that as lawyers they will be capable of adequately representing members of the pub-

---

4. *Cf.* Application of Park, 484 P.2d 690 (Alaska 1971); Application of Brewer, 430 P.2d 150 (Alaska 1967).

lic. The exchange of ideas between class-mates and teachers, the legal knowledge, and the sense of ethics acquired through meeting requirements for graduation from an accredited law school are all reasonably related to the state's interest in seeing that those who hold themselves out to the public as attorneys at law, and thus as officers of the court, are properly qualified. On the other hand, it is practically impossible to adequately supervise a course of law pur-sued under a clerkship program. The ap-plicant does not have the benefit of study-ing and exchanging ideas with a group of his peers, of learning from instructors spe-cifically prepared to teach individual sub-jects and of establishing his qualifications before an impartial institution. While in-dividuals trained only as clerks may, and have performed ably as attorneys, there is much greater assurance that minimum standards will have been acquired by re-quiring graduation from an accredited law school. It is for this reason that educa-tional requirements for admission to the bar have long been approved in other jurisdictions.[5]

█ Stephenson contends, however, that the Board had no authority to promulgate a rule conflicting with the requirements of the statute. As indicated, *supra*, AS 08.-08.140(3) does not require graduation from a law school when the applicant has en-gaged in the active practice of law for at

least 10 years, while the bar rule requires graduation from an "accredited law school".[6] This court approved the bar rules by Supreme Court Order No. 75, dat-ed January 29, 1965. If such approval may be regarded as an adoption of the bar rule by this court, then under the court's inher-ent powers over admission to practice law, the rule would be enforceable regardless of the more lenient requirement of the statute.[7] As we stated in *Application of Houston*:[8]

We have taken jurisdiction pursuant to that provision of the Alaska Constitu-tion vesting the judicial power of the state in this court and under the rule fol-lowed by the great majority of the states which holds that the supreme court of a state has the inherent and final power and authority to determine the standards for admission to the practice of law in that state. In adopting the majority rule, we recognize that the legislature may enact laws governing admission to practice law but hold that it may not re-quire this court to admit on standards other than those accepted or established by the court. (Citations omitted.)

Despite this statement, however, there has been considerable confusion as to control-ling authority in cases of conflict between statutory requirements and those of the Alaska bar rules approved by this court.[9]

5. Hackin v. Lockwood, 361 F.2d 499, 504 (9th Cir. 1966); Application of Schatz, 80 Wash.2d 604, 497 P.2d 153 (1972); Petition of Batten, 83 Nev. 265, 428 P.2d 195 (1967); Henington v. State Bd. of Bar Examiners, 60 N.M. 393, 291 P.2d 1108, 1111 (1956); Petition of Florida State Bar Ass'n, 134 Fla. 851, 186 So. 280 (1938); Rosenthal v. State Bar Ex-amining Comm., 116 Conn. 409, 165 A. 211 (1933).

6. An attorney once admitted to the bar may confine his practice to very narrow aspects of the legal profession. We can-not thus equate the practice of law for any period of time with the broad back-ground inherent in the accredited law school requirement.

7. Stephenson maintains that if the bar rule is not to be considered as adopted

by the court, it would be invalid because of its inconsistency with the statute. AS 08.08.110 specifies:
The board may
(1) adopt rules fixing the qualifica-tions, requirements and procedure for admission to the practice of law *not* inconsistent with this chapter;
. . . . (Emphasis added.)

8. 378 P.2d 644, 645 (Alaska 1963).

9. In the matters of the applications of Hanson, Babcock and Johnson, 4 Alas-ka L.J. 87, 88 (June 1966), the court, with Justice Rabinowitz dissenting, or-dered the admission of applicants who complied with statutory requirements but did not meet the more stringent stand-ards accepted by this court when it ap-proved Alaska Bar Rule II.

We, therefore, take this opportunity to re-iterate our holding in *Application of Houston* as to our inherent and final power and authority to determine the standards for admission to the practice of law in Alaska.

■ We, accordingly, are confronted with the question of whether the language used in Supreme Court Order No. 75 was tantamount to the adoption of the rule by the court. Resolution of this question in part requires a review of a singularly unhappy chapter in the relationship between the bar and the court. The Territorial Legislature had initially passed an Integrated Bar Act in 1955.[10] There was no state court system at that time and rules were adopted by the Alaska Bar Association which, with certain amendments, continued to be in force and effect until 1964. By Supreme Court Order No. 64, promulgated on April 7, 1964, the court ordered "[t]hat the Rules of the Alaska Bar Association numbered one through 13, attached hereto, are hereby promulgated as rules of this court, effective June 1, 1964."

The Board of Governors refused to acknowledge the binding effect of the court promulgated rules. As a result the court ordered the members of the Board to be relieved of their duties, the records and funds of the bar association to be seized, and appointed an interim trustee. A suit was filed in the United States District Court by the Board of Governors and numerous attorney members against the Supreme Court of the State of Alaska seeking, *inter alia,* an injunction. With the assistance of a committee appointed by the American Bar Association, the bitter conflict between court and bar was eventually settled.[11] A stipulation was entered into providing in part that the Alaska Bar Association and its Board of Governors would adopt rules relating to discipline and admission which were attached to the stipulation, and that the supreme court, upon such adoption, would approve the rules. The rules were agreed upon in advance by the court, and the representatives of the bar association asked approval by a majority vote of the members of the bar. The inherent powers of the court over admissions and disciplinary matters appeared to be recognized, whereas the court did not assert such power as to other functions of the bar which were to be controlled by by-laws, without intervention by the court. Accordingly, while the supreme court did not undertake to promulgate the rules as was done by the controversial Order No. 64, the court nevertheless approved the rules which was tantamount to adopting them.

In the case of Application of Schatz, 80 Wash.2d 604, 497 P.2d 153 (1967), an applicant for admission to the bar was refused the right to take the Washington State bar examination because he had not graduated from an approved law school as required by the Washington State Bar Association's rules for admission. The applicant contended that the delegation to the Board of Governors to adopt rules *"subject to the approval of the supreme court* fixing the qualifications, requirements and procedure for admission to the practice of law . . ."[12] (emphasis supplied) was an unlawful delegation of legislative authority. The court held:

> The language of the statute clearly lodges all ultimate authority in the Supreme Court. The Board of Governors, acting in this area, is an arm of the court, independent of legislative direction. . . .
>
> It is well settled by repeated decisions that the power to admit and enroll attorneys in the state of Washington, together with the power to disbar, is exclusively in the Supreme Court. This rule is in conformity with the established rule throughout the country that admission to

10. SLA 1955, ch. 196.

11. Alaska L.J., Vol. 2, No. 6 (June-July 1964); Vol. 2, No. 7 (Aug. 1964); Vol. 2, No. 9 (Oct. 1964).

12. 497 P.2d at 155 (Wash.1967).

practice is the exercise of a judicial function and one of the inherent powers of the court. (Citations omitted.) [13]

Thus, the court held that subjecting the bar association's right to adopt rules to "approval of the Supreme Court" rendered the rules thereby approved an exercise of the power of the court, rather than an allegedly improper delegation of legislative authority. Similarly, the approval of the Alaska Bar Association's rules of admissions by the supreme court constituted an exercise of this court's inherent power over admission matters, hence the requirements of the rule are enforceable even though more stringent than the requirements of the statute.

Subsequent to the promulgation of Supreme Court Order No. 75, the rules have been construed as constituting such an exercise of this court's powers over admission matters. In Application of Steelman, 448 P.2d 817, 819 (Alaska 1969), this court stated:

Alaska Bar Rule 2 § 2(f) [1] [sic], promulgated by this court on February 8, 1965, was in force at the time petitioner made application for admission on reciprocity and is still in force.

In *Application of Brewer* we held that although the final power and authority to determine standards for admission to the bar of Alaska rested in this court, we would nevertheless accept a legislative standard for admission provided it was acceptable to the court and had a

rational connection with an applicant's fitness to practice law. By this holding we did not intend to imply that legislative standards similar to and superimposed upon standards already established by the court would be accepted merely because they might have some relevancy to an applicant's fitness to practice law. The authority and responsibility for establishing clear and unambiguous standards for admission rests in this court and where the court has already established a standard it will not accept a legislative attempt to modify that standard which creates confusion and inconsistency without adding substantively to the standard. (Citation omitted.) [14]

While the argument here presented, concerning the history of Supreme Court Order No. 75 and its contrast with Supreme Court Order No. 64, was not advanced in *Application of Steelman* or *Application of Brewer*,[15] we affirmed in those cases that the approval of the Alaska bar rules by Supreme Court Order No. 75 constituted promulgation of those rules by this court.[16]

■ Applicant further contends that to require him to take a bar examination violates the equal protection clause of the fourteenth amendment to the United States Constitution. He alleges that the 1931 requirements for admission to practice in Alaska permitted a person with two years clerkship in a law office who passed the state bar examination to be admitted, and that the Oklahoma requirements which he

13. *Id.*

14. 448 P.2d 817, 819 (Alaska 1969). Basically there are three situations that may arise: (1) A statute could conflict with the rules by imposing more stringent requirements for admission; (2) The statute could conflict with the rules by specifying a more lenient requirement; and (3) The statute could treat a subject not covered in the rules; i. e., if the rules did not define "practice of law", the statute could give such a definition. It is in this third category that the legislative standard may be acceptable to the court if it has a rational connection to the applicant's fitness to practice law.

15. 430 P.2d 150, 152 (Alaska 1967).

16. *See also* Application of Peterson, 459 P.2d 703, 706–709 (Alaska 1969). It is significant that two of the three justices who promulgated Supreme Court Order No. 75 concurred in the *Steelman* and *Peterson* holdings. In the cases before this court the Board of Governors of the Alaska Bar Association (successors to a party that participated in the settlement of the law suit between the Alaska Bar Association, et al. and The Honorable Buell A. Nesbett, et al.) has consistently maintained a similar position with reference to the court's inherent powers and the promulgation of Order No. 75.

met were more stringent. He alleges that Alaskan attorneys who were admitted to practice prior to the requirements for graduation from an accredited law school have not been required to take a second examination. It is thus his position that he has not been accorded equal treatment with Alaskan attorneys presently practicing who were admitted to the bar prior to the requirement of graduation from an accredited law school. This argument has little merit since the Alaskan attorney was required to pass an Alaskan bar examination. Moreover, as we stated in *Application of Brewer*:

> When the legislature adopts new standards for admission to the bar, it is not obliged by the requirements of equal protection of the laws to make its legislation retrospective so as to encompass situations which existed prior to the time the legislation becomes effective. To make the legislation prospective in operation only, as was done here, satisfied constitutional requirements of equal protection so long as the law in operating prospectively does not invidiously discriminate between different classes of persons. There was no such discrimination here.[17]

■ Applicant additionally alleges that the Board of Governors is estopped from barring him from admission to the practice of law, contending that he was misled into believing that he was eligible for reciprocity as a result of the Martindale-Hubbell Law Directory referring to the requirements of AS 08.08.140 for admission to the practice of law in Alaska without mention of Bar Rule II, section 2(f). He further contends that he was furnished similar information by the Executive Director of the Alaska Bar Association and that he relied upon such information changing his position for the worse by closing his practice in Oklahoma and moving to Alaska.

This issue was not raised at the hearing before the Board, but affidavits have been submitted to this court indicating that the applicant was initially furnished with a copy of the bar rules as well as the provisions of the statute. The Executive Director has further denied under oath that he furnished erroneous information to the applicant as to the requirements for admission. We thus find no merit to this contention. Furthermore, it is well established that a state is not estopped to assert a result dictated by its rules, even if a state officer has made a contrary representation from the terms of the rules to an employee and caused reliance on such representation.[18]

■ As one of his principal points applicant alleges that a general bar examination is unfair to an experienced attorney. He contends that such examinations are designed to test the knowledge of recent graduates who have just completed years of study covering a wide variety of subjects. The experienced practitioner on the other hand normally tends to specialize to a certain degree, so that over the years he no longer retains in mind details pertaining to other subjects. It thus becomes more difficult for him to pass a general bar examination as he practices longer. Applicant contends that he should be entitled to take a special "lawyer's examination".

While it may be preferable to have an attorney's examination separate from the examination of those not previously admitted to a bar, there is no authority that the requirement of passing a uniform examination violates any constitutional right.[19] We have previously held in *Application of Peterson*[20] that one who has passed an examination in another jurisdiction may still be required to pass the Alaska examination in order to indicate his qualification to practice law in this state.

17. 430 P.2d 150, 153 (Alaska 1967).

18. Whaley v. State, 438 P.2d 718, 720 (Alaska 1968).

19. The vast majority of states do not provide for a separate attorney's examination (see 5 Martindale-Hubbell Law Directory (104th ed. 1972)).

20. 459 P.2d 703 (Alaska 1969).

Subsequent to the filing of this appeal the Alaska Bar Association recommended new admission rules for adoption by the court. The new rules which have recently been adopted provide for a separate "attorney bar examination".[21] Thus, applicant may now take an examination to be designed specifically for practicing lawyers, rather than being subjected to any possible unfairness involved in requiring him to pass the general examination.

█ Additionally it is contended that this court has the final authority on admission matters and that despite applicant's failure to comply with the requirements of the rule, we should order applicant's admission. While we are not unsympathetic to applicant's position, and might wish to waive the requirements of the rules in his case, to do so would render it impossible to treat all applicants with requisite uniformity:

Adoption of appellant's position would in our view abolish any semblance of objective criteria and would substitute in its place rather vague and shifting standards which dramatically increase the probabilities of ad hoc admissions. If appellant's suggested standards were accorded primacy, we thereafter could not say with any degree of assurance that a particular applicant possessed the requisite qualifications to advise and represent clients in legal matters. (Footnote omitted.) [22]

The order of the Board of Governors of the Alaska Bar Association denying applicant's application for admission to the practice of law in the State of Alaska is hereby affirmed.

ERWIN and FITZGERALD, JJ., not participating.

21. Alaska Bar Rules, Part I, Rule 2, section 2, promulgated June 8, 1973.

22. Application of Peterson, 459 P.2d 703, 706 (Alaska 1969).