Application of Harvey Patrick SULLIVAN,
Petitioner,

v.

ALASKA BAR ASSOCIATION, Respondent.

No. 2783.

Supreme Court of Alaska.

June 14, 1976.

Harvey Patrick Sullivan, pro. per.

Mary La Follette, Anchorage, for respondent.

Before RABINOWITZ, CONNOR, ERWIN and BURKE, Justices, and DIMOND, Justice Pro Tem.

OPINION

ERWIN, Justice.

The Alaska Bar Association has filed a petition for rehearing in this matter. They contend that this court overlooked or misconceived material facts in ordering that Harvey Sullivan be permitted to take the Alaska Bar Examination administered in February, 1976.

Upon graduation from law school in July, 1975, Sullivan, a life-long resident of Alaska, sat for the July Bar examination which was given in Anchorage. While awaiting the examination results, Sullivan received orders from the Department of the Army instructing him to report for active duty in the Corps of Engineers. The orders provided for temporary duty from October 18, 1975, to January 30, 1976, at Fort Belvoir, Virginia. In addition, Sullivan was ordered to report for his initial assignment at Fort Leonard Wood, Missouri, by February 17, 1976. Sullivan departed from Alaska for active duty in mid-October, shortly after learning that he had failed the July Bar examination.

Upon arriving at Fort Belvoir, Sullivan contacted the military personnel center and spoke with the captain in charge of his assignments. When Sullivan expressed his desire to return to Alaska to sit for the February Bar examination, the captain recommended against it, stating that it would be preferable to have him proceed to Fort Leonard Wood as originally ordered. Nevertheless, Sullivan continued his attempts to obtain the military's approval by writing the Secretary of the Army and by enlisting the aid of a member of Alaska's congressional delegation. When this was unavailing, Sullivan did not submit an application for the February Bar examination.

Upon completing his course of instruction at Fort Belvoir, Sullivan returned to Anchorage on February 3, 1976, to secure certain items of personal property. While in Anchorage, Sullivan contacted the Adjutant General's office at Fort Richardson in an attempt to gain approval to sit for the Bar examination to be administered in the last week in February. On the morning of February 4, tentative approval to take the examination was given by the Brigade Commander at Fort Leonard Wood.

With this approval, Sullivan approached the Executive Director of the Alaska Bar Association, Mary La Follette, and inquired whether he would be allowed to take the examination scheduled three weeks hence. Ms. La Follette informed Sullivan that the deadline for late applications had passed and that as a consequence, he would not be allowed to sit for the examination. Sullivan then contacted Keith Brown, President of the Board of Governors of the Alaska Bar Association. Mr.

Brown explained that the board was also forced to adhere to the Alaska Bar Rules.

On February 5, Sullivan filed a petition in this court for expedited review of the decision rendered by the Bar Association with respect to his application. On February 6, this court conducted a hearing with Justices Erwin and Burke presiding; also in attendance was Ms. La Follette, speaking on behalf of the Alaska Bar Association, and petitioner Sullivan.

At the hearing Sullivan informed the court that if he did not receive permission to sit for the examination, he would have to leave the next day in order to report to Fort Leonard Wood by February 17, since his original orders were binding unless he was allowed to take the test. The Alaska Bar Association argued that the applicable rule, Alaska Bar Rule 3(3),[1] established January 15, 1976, as the last date for filing an application for the February examination, and further, that the Board of Governors had no discretion to relax the rule regardless of the circumstances. The Bar Association therefore concluded that Sullivan would not be allowed to take the examination.

Later that afternoon this court (Chief Justice Boochever not participating) ordered that Sullivan be allowed to take the examination despite the fact that he failed to comply with Rule 3(3) of the Alaska Bar Rules, because of the extraordinary circumstances involved in the case.

The Alaska Bar Association thereafter filed a petition for rehearing which was denied. This opinion explains the basis for our decision.

The Bar Association submits that review by this court was premature in that Sullivan did not comply with certain administrative procedures, which they allege are a prerequisite to this court's jurisdiction. Specifically, they argue that before this court could rule on Sullivan's petition, he was required to complete the following steps: one, file an application with the Bar Association; two, upon denial of the application for failure to comply with the filing deadline, he was obligated to appeal to the Board of Governors; and three, after the Board denied the appeal, he was required to adhere to the procedural rules of this court as set forth in Part IV of the Appellate Rules.[2]

█ It is well established that the final power and authority to determine standards for admission to the practice of law in Alaska reside in this Court.[3] The Bar

1. Alaska Bar Rule 3(3) provides:
   An application shall be filed not later than May 1 for the July bar examination and not later than December 1 for the February bar examination. In the event that an application is filed late an additional late filing fee of $25 shall be paid if filed not later than fourteen days after the last day for filing a timely application, and a late filing fee of $100 shall be paid if filed thereafter; provided, however, no application shall be accepted for late filing unless such application is filed at the office of the Alaska Bar Association not later than June 15 for the July bar examination and January 15 for the February bar examination. An untimely application shall be considered an application for the next following examination unless withdrawn by the applicant.

2. The discussion which follows need not be concerned with the third step referred to by the Bar Association. Alaska Bar Rule 8 provides:
   To the extent practicable the procedure governing an appeal by an applicant for admission to the practice of law from a decision of the Board of Governors, shall be governed by the rules of practice in civil matters set forth in Part IV, Alaska [Appellate Rules].
   Part IV of the Appellate Rules covers the procedure to be followed in civil cases brought to this court, such as the time and manner for taking an appeal, the preparation of the record on appeal, matters relating to the preparation and filing of briefs and motions, the procedure for requesting oral argument, and other related matters. Although Sullivan did not comply with the applicable appellate rules, it is clear that we had the power to dispense with the rules under Rule 46, which provides:
   These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by this court when a strict adherence to them will work surprise or injustice.

3. See Application of Houston, 378 P.2d 644 (Alaska 1963); Application of Brewer, 430 P.2d 150 (Alaska 1967); Application of Steel-

Association, which was created by the State Legislature, acts as an administrative arm of the judiciary for the admission of lawyers to practice law before the courts of the State of Alaska.[4] As we have noted in the past:

> While this court ultimately reserves the authority to determine whether or not an applicant should be admitted to the bar, considerable administrative responsibility has been delegated to the Alaska Bar Association.[5]

Thus, the relationship between the Supreme Court and the Bar Association is a delicate one.[6]

◼ To prevent a dislocation of the respective functions of the Bar Association and this court, we are generally unwilling to intercede in Bar admission cases until the applicant has exhausted his administrative remedies.[7] Thus, we require, if possible, that the petitioner comply with the procedural steps spelled out in the Alaska Bar Rules before this court reviews the case. Our deference to the procedures spelled out in the Bar Rules does not have a jurisdictional foundation, however, since this court has the inherent power to intercede at any time in admission matters.

◼ It is our opinion, then, that the normal procedures may be relaxed when, taking into account the balance necessary to the relationship we have previously identified, we determine the interests of justice require it. We are therefore unable to adopt the position advanced by the Bar Association that an applicant must comply with certain administrative procedures before we have jurisdiction to review the case.

◼ In reaching this decision we are not unmindful of the fact that if the Bar Association is to function effectively on a day-to-day basis, this court must demand that an applicant comply with the appropriate Bar Rules prior to our review in all but the most extreme circumstances.

◼ In the instant case, Sullivan was led to believe by the United States Army that he would be unable to sit for the February examination. On February 4, approximately three weeks before the examination, he was informed that he could remain in Anchorage until the test was administered. Sullivan was also instructed that if he was not going to take the examination he was to report to Fort Leonard Wood forthwith, as originally ordered. It was apparent, then, that if he was not allowed to sit for the examination, he would have to leave Anchorage the next day to reach his destination by car on February 17th. With this in mind, Sullivan immediately contacted the Executive Director of the Bar Association and the President of the Board of Governors. Both parties explained that they had no discretion to relax the rules and thus Sullivan would be unable to sit for the upcoming examination.

The next day, February 5, Sullivan filed a petition with this court seeking expedited review of the Bar Association's decision with respect to his application. At that point we had the option of waiving the procedural irregularities that existed, or requiring Sullivan to adhere to the normal procedures spelled out in the Bar Rules. The court chose to waive the Bar Rules and hear Sullivan's petition. We think it evident that had this court required strict compliance with normal procedures, the re-

---

*man*, 448 P.2d 817 (Alaska 1969); *Application of Peterson*, 459 P.2d 703 (Alaska 1969); *Application of Stephenson*, 511 P.2d 136 (Alaska 1973).

4. Under AS 44.62.010–650, it is subject to the Administrative Procedure Act.

5. *Application of Peterson*, 499 P.2d 304, 306 (Alaska 1972).

6. This court welcomes proposals from the Bar Association spelling out their perception of the relationship between that body and the Supreme Court.

7. One principle of administrative law is that a party seeking review by the court must first exhaust his remedies within the administrative agency. *See* 3 Davis, Administrative Law Treatise, § 20.01, at 56 (1972).

lief Sullivan was seeking would have been forfeited simply because of the passage of time.

We are therefore of the opinion that our waiver of the administrative procedures and our prompt consideration of Sullivan's petition were justified under the circumstances.

■ The Bar Association submits that due process standards were offended when we granted Sullivan's petition after a brief oral hearing. They contend that under normal procedures they would have had an opportunity to present evidence and cross-examine Sullivan before a decision was rendered.

In the past this court has demonstrated an unwillingness to become a trial tribunal in Bar admission cases. We have consistently delegated factual determinations to the Bar Association and Board of Governors.[8] In the instant case, however, there were no factual determinations to be made.[9] Simply stated, Sullivan admitted that he had failed to comply with certain admission procedures; the Bar Association and Board of Governors took the position that they were unable to relax the Bar Rules. It is our view that there was no need for the Bar Association to present evidence or cross-examine Sullivan. The questions presented to this court were legal, not factual. Thus, while we would agree that the procedures utilized in this case were somewhat unorthodox, we do not find that they offend due process standards.

The Bar Association additionally argues that in ordering that Sullivan be allowed to take the examination, this court failed to consider the precedent established in *Application of Walsh*, Alaska, file number 2261. Walsh submitted an application to take the Alaska Bar examination on May 2, 1974, one day after the filing deadline. He claimed that because of financial considerations, demands from work and school, and the death of a close relative, he failed to submit the application on time. The Board of Governors denied his application, and he thereupon filed an application to write the examination with this court. There is some question whether the action brought by Walsh was filed as an appeal, an original application, or a petition for review. Nevertheless, the court treated the matter as a petition for review and denied it.

Although Walsh's application was filed only a day after the deadline, whereas Sullivan's was more than two weeks late, we do not consider that to be the determinative factor.[10]

There are three basic reasons why the Bar Association needs approximately six weeks to process a Bar application. First, they must conduct an investigation of the applicant's character; second, they must assure that the applicant will be a resident of the state thirty days prior to the examination; third, they need to know how many people will be sitting for the examination so they can obtain the appropriate number of tests from New Jersey and California.[11]

8. *See Application of Peterson*, 459 P.2d 703 (Alaska 1969); *Application of Houston*, 378 P.2d 644 (Alaska 1963); *Application of Steelman*, 448 P.2d 817 (Alaska 1969). *But see, Application of Stephenson*, 511 P.2d 136 (Alaska 1973).

9. If the Bar Association had alleged that there were questions of fact in dispute, we would have remanded the case to the Board of Governors and ordered an expedited hearing.

10. Furthermore, I am in agreement with Justice Burke's concurrence to the effect that *Application of Walsh* was erroneously decided.

11. The Alaska Bar examination is a three-day test consisting of three separate sections. On the first day the examinee answers eight essay questions which have been drafted by the California Bar Examiners and sent to Alaska. The next test day consists of two hundred objective questions, covering six areas of the law. This part of the examination is written by the National Conference of Bar Examiners in New Jersey and administered in a majority of jurisdictions. The final day of testing is made up of four essay questions dealing with Alaska law and is produced by members of the State Bar.

In view of the fact that Sullivan was born in Alaska and had previously taken the exam, only the latter reason could be considered pertinent in determining the effect of his late application. The same may not be said of Walsh, who was not a resident of Alaska and had never taken the examination before.

Also, Sullivan, unlike Walsh, was under the impression that he would not be allowed to take the examination until after the filing deadline had passed because of his commitment with the United States government. Finally, Walsh was not prevented from taking the next examination which was scheduled six months hence. Sullivan, on the other hand, may have been prevented from taking the examination for an unforeseeable length of time because his obligation to the Army inhibited his ability to return to Alaska at will.

We do not consider our decision to allow Sullivan to sit for the examination to be a radical departure from our previous decisions in the area of Bar admissions. In the future we shall continue to defer to the administrative expertise of the Bar Association and Board of Governors with respect to admission procedures except in cases where a majority of the court is convinced that the interests of justice compel us to intercede.

Our previous decision remains unmodified.

BOOCHEVER, C. J., not participating.

BURKE, Justice (concurring).

I concur, but would go one step further. In my judgment, *Application of Walsh* is not only distinguishable, it was erroneously decided. To the extent that the order in that case provides any precedent, however weak, contrary to our holding in this case, it should be overruled.

DIMOND, Justice Pro Tem., with whom RABINOWITZ, Justice, joins, dissenting.

I dissent from the majority opinion on two basic grounds: (1) a precedent established in a previous decision of this court, and (2) the effect of the Alaska Bar Rules as they bear on the authority of this court over matters relating to admission to practice law.

*Precedent.*

Approximately two years ago, David Walsh was two days late in filing an application to take the July 1974 Alaska Bar examination. His application was denied by the Board of Governors of the Alaska Bar Association on the ground that the Board had no authority under the Alaska Bar Rules to vary the deadline for filing.

Mr. Walsh then applied to this court for permission to take the examination. In an affidavit in support of his application, he stated that he had intended to file the application by April 26, 1974, but that the sudden death of a close relative and a subsequent mathematical error on his part in computing the deadline for filing resulted in the untimely filing of his application. In a unanimous decision, without opinion or the giving of any reasons, this court ordered that Mr. Walsh's application be denied.

At the time of the *Walsh* case, a Bar Rule required an application to be filed not less than 90 days prior to the examination. After the *Walsh* decision, the Rule was amended to alleviate, to some extent, the stricture of this requirement. Rule 3, Section 3 of the Alaska Bar Rules was changed to read as follows:

An application shall be filed not later than May 1 for the July bar examination and not later than December 1 for the February bar examination. In the event that an application is filed late an additional later filing fee of $25 shall be paid if filed not later than fourteen days after the last day for filing a timely application, and a late filing fee of $100 shall be paid if filed thereafter; provided, however, no application shall be accepted for late filing unless such application is filed at the office of the Alaska Bar Association not later than June 15 for the July bar examination

and January 15 for the February bar examination. An untimely application shall be considered an application for the next following examination unless withdrawn by the applicant.

This was the status of the rule at the time Harvey Sullivan requested permission to take the February 1976 bar examination.

Mr. Sullivan had taken the July 1975 examination and had received notice on or about October of that year, while he was serving in the Unietd States Army at Fort Belvoir, Virginia, or shortly before he left for Fort Belvoir, that he had failed to pass the examination. Under Rule 3, Section 6 of the Bar Rules, he could have written to the executive secretary of the Bar, giving notice of his intention to reapply for the February 1976 examination within 60 days after receiving such notice of his failure to attain a passing grade.[1] In addition, if he failed to give such written notice of his intention prior to the expiration of the 60-day period, he still had the option of filing a regular, initial application by December 1, 1975; a first late application 14 days later, on or about December 15, 1975; and a final late application no later than January 15, 1976.[2]

Mr. Sullivan did not avail himself of these opportunities. His reason was that at the time he received notice that he had failed to pass the July examination, he was under orders to report to Ft. Leonard Wood, Missouri, by February 17, 1976, and that he did not receive tentative approval from his military superiors to take the February bar examination until February 4, 1976. He had arrived in Anchorage on the day

prior, February 3, to secure his automobile and personal effects, and on February 4, met with the executive secretary of the Association and was informed it was too late for him to file an application for the examination, which was to begin on February 24, 1976. The Board of Governors sustained the executive secretary's determination, and Mr. Sullivan then applied to this court for relief. In his application, he states:

> The petitioner submits that had he received notice from the United States Army which could have afforded him timely opportunity to apply for the February examination, he would have done so.

I can appreciate the predicament that Mr. Sullivan was in when he believed he would have to report to Ft. Leonard Wood in February and would probably not be able to take the Alaska Bar Examination given that month. But there was no reason, when notified that he had failed to pass the July examination, he could not have either given notice within 60 days of his intention to take the next examination, or have filed late applications under Rule 3, Section 3 of the Alaska Bar Rules. He could have taken such actions out of an abundance of caution or prudence, just in the event—as it developed—that he did receive late word that he could take time off from his army duties to take the examination. In fact, at the hearing before this court, Mr. Sullivan was quite candid in admitting that he might have taken these measures because he was familiar with the pertinent rules.

---

1. Rule 3, § 6 of the Alaska Bar Rules provides:

> An applicant who has failed to pass a bar examination required by Rule 2 may reapply for admission to take a subsequent bar examination.
> Reapplication shall be made by:
> (a) Sending written notice of intention to reapply to the Board within 60 days following notice of failure. Such notice shall include a description of the applicant's interim employment and any other circumstances affecting the applicant's suitability

for admission to the practice of law in Alaska;
> (b) Providing such additional information as may be required by the Board.
> Applicants for reexamination shall be required to pay such additional examination and application fees as may be fixed by the Board. An applicant who does not comply with this Section must reapply pursuant to Sections 1 through 5 of this Rule.

2. Alaska Bar Rules, Rule 3, § 3. *See also* Rule 3, § 6, *supra*, n. 1.

I mention these facts in some detail, which I realize is repetitive to a degree of what has been said in the majority opinion, in order to make it clear that in considering Mr. Sullivan's case, the court was faced with a precedent arising from its action in the *Walsh* case which it ought to have followed in Sullivan's case. There was no reason, substantial or otherwise, for the majority of the court to decide the case of one late applicant one way, and then to completely reverse its position less than two years later and decide another late applicant's case precisely the opposite way.

The majority states that it treated the *Walsh* application as a petition for review, and questions whether the denial of a petition for review can even be considered as precedent. If the majority is referring to the fact that as a discretionary act the court may deny a petition for review without deciding the merits of a petition, then, of course, such a decision would have little value as precedent.

But I submit that the *Walsh* application actually was not a petition for review as contemplated by Appellate Rules 23 and 24, which provide for appellate review, in the discretion of the court, from an order or decision of a superior court which is not appealable under Appellate Rule 5.

The decision of the Board of Governors not to permit Mr. Walsh to take the examination was final—there was nothing interlocutory about it as in cases where review is sought from a non-appealable order of a court.[3] In addition, the application to the court was entitled "Application for Original Relief or, in the Alternative, Notice of Appeal". The order of the court with respect to Mr. Walsh's application read:

> The Court having considered the application of David James Walsh for permission to write the July, 1974, Alaska Bar Examination now denies the application.

The Court did not deny a "petition for review" in the exercise of its discretionary authority to deny such review without consideration of the merits of a petition. The order that was entered indicates that instead, the court considered on its merits the application of Mr. Walsh for permission to take the bar examination, and denied him permission to do so.

I believe this was a precedent which the court ought to have adhered to in the *Sullivan* case, and that the rule of stare decisis[4] should control here. It is true that we have held that this doctrine is not immutable.[5] But we have recognized the validity of the doctrine in the *In Re G. K.* decision[6] by stating that:

> We fully recognize the necessity in a government of law for respect for past exercise of judicial judgment and the need for continuity and predictability of legal relations.[7]

As the United States Supreme Court has stated:

> Very weighty considerations underlie the principle that courts should not lightly overrule past decisions. Among these are the desirability that the law furnish a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise; the importance of furthering fair and expeditious adjudication

---

3. Alaska Bar Rule 7 governs the procedure to be followed by an applicant who wishes to appeal to the Board of Governors when he has been denied an examination permit or has been denied certification to the Supreme Court for admission to practice law. Bar Rule 8 § 1 then provides that "An *appeal* to the Supreme Court may be filed by an applicant from a decision of the Board . . . .." [emphasis added].

4. Stare decisis means to abide by or adhere to decided cases. Black's Law Dictionary at 1577 (1957).

5. *In Re G. K.*, 497 P.2d 914, 916–17 (Alaska 1972).

6. *Id.*

7. *Id.*, at 916.

by eliminating the need to relitigate every relevant proposition in every case; and the necessity of maintaining public faith in the judiciary as a source of impersonal and reasoned judgments. The reasons for rejecting any established rule must always be weighed against these factors.[8]

The majority attempts to distinguish the *Walsh* and *Sullivan* cases on the basis of the reasons for the several weeks delay between the date an application is filed and the date of the examination. As the majority points out, this amount of time—approximately six weeks—is necessary in order for the Bar to conduct the character investigation of the applicant, to assure that the applicant will be a resident of the state for 30 days prior to the examination, and to be able to ascertain how many persons are to take the examination in order that a sufficient number of tests can be obtained from New Jersey and California.[9] The majority then goes on to say that the first reason would have no application to Mr. Sullivan because he had taken the July 1975 examination, and the character investigation had already been made, and that the second reason also would be inapplicable because Mr. Sullivan was a resident of Alaska.

I believe this is a distinction without any real difference. When Mr. Walsh's application was filed, the Bar had more than the requisite time within which to conduct a character investigation.[10] And since Mr. Walsh's application was filed just two days short of the 90-day deadline, he had ample

time to come to Alaska and establish the required 30-day Alaska residence.

A further distinction between the two cases is attempted by the majority on the ground that nothing prevented Mr. Walsh from taking a subsequent examination,[11] whereas Mr. Sullivan may have been prevented from taking an examination for an unforeseeable length of time because, as the majority states, "his [Sullivan's] -obligation to the Army inhibited his ability to return to Alaska at will".

That was the basis of Mr. Sullivan's argument for not giving notice or filing for re-examination in February 1976, i. e., the fact that he was in the Army and had standing orders to report to Ft. Leonard Wood at or about the time of the examination, which was being given in February 1976. But as it turned out, Mr. Sullivan was in Alaska at the time the examination was given, and was authorized by the United States Army to take the examination.

I have pointed out earlier in this dissenting opinion that there was absolutely no obstacle to Mr. Sullivan's applying to take the February 1976 examination within the time limits prescribed by rule, even though he did not know whether his official duties with the Army would permit him to take the examination or not. Furthermore, if Mr. Sullivan's Army duties had prevented him from returning to Alaska for the examination in February 1976, there is no reason why the Board of Governors, in the discretion vested in it under Rule 4, Section 2,[12] could not have arranged for Mr.

---

8. *Moragne v. States Marine Lines*, 398 U.S. 375, 403, 90 S.Ct. 1772, 1789, 26 L.Ed.2d 339, 358 (1970). *See also Edelman v. Jardan*, 415 U.S. 651, 671, 94 S.Ct. 1347, 39 L.Ed.2d 662, 677, n. 14 (1974) ; *United States v. Egelak*, 173 F.Supp. 206, 211 (D.Alaska 1959) ; *United States v. Mason*, 412 U.S. 391, 399–400, 93 S.Ct. 2202, 37 L.Ed.2d 22, 29 (1973) ; *M'gruder v. Bank of Washington*, 9 Wheat. 598, 602, 6 L.Ed. 170, 171 (1824).

9. As to the last reason, see the explanation in footnote 11 of the majority opinion.

10. There is nothing in the rules which requires that a character investigation be completed be-

fore the examination takes place, although the Bar probably does attempt to complete such investigation prior to that time.

11. Mr. Walsh was not permitted to take the July 1974 examination. The next examination was given in February 1975.

12. Rule 4, § 2 of the Alaska Bar Rules states in part:

The bar examination shall be given not less than once every twelve months, shall be written, and shall be conducted in the manner and at the time and place established by the board.

Sullivan to take the examination at some place other than Alaska in light of any exigent circumstances that might have been present in his case.[13]

I am unable to see any real distinction between the *Walsh* and *Sullivan* cases that would justify the court in ignoring the doctrine of stare decisis by taking one position as to Mr. Walsh, and exactly the opposite position as to Mr. Sullivan, with regard to the late filing of applications for taking the Alaska Bar Examination.

*The Alaska Bar Rules.*

The majority states that the final power and authority to determine standards for admission to the practice of law in Alaska resides in this court. In support of this proposition, the majority cites the *Houston, Brewer, Steelman, Peterson* and *Stephenson* cases,[14] and then goes on to refer to the fact that the Bar Association is an administrative arm of the judiciary with respect to admission to practice law.

The Alaska Bar Rules are a product of joint action of the Bar and this court. The Bar adopts the rules, but they are not effective until further adopted by the court. Bar Rule 60(b) provides:

> These rules may be changed at any time by a majority vote of the Committee at a duly held meeting at which a quorum is present, subject, however, to the approval of a majority vote of the Board of Governors of the Alaska Bar Association and the adoption of the change by the Supreme Court of the State of Alaska.[15]

What this rule means is that an accommodation has been made between the authority of the Supreme Court to determine who may practice law in Alaska, and the authority and independence of the legisla-

tively integrated Alaska Bar Association in providing rules for admission to practice law. By virtue of such accommodation, the essential relationship between the parties requires comity to be exercised by both the court and the Bar, and a proper recognition by each of the authority that each is to exercise in the regulation of the legal profession.

To put it another way, Bar Rule 60(b) means that the court will refrain from imposing rules on the Alaska Bar Association without its consent, and the Association, in turn, will not adopt rules without approval of the Supreme Court. That is how the matter stood when Harvey Sullivan appeared before the court and sought permission to take the February 1976 bar examination, despite his noncompliance with the Bar Rules relating to the taking of the examination.

In this case, the majority has failed to adhere to the spirit of comity which has governed the relations between the court and the Bar for approximately the past 12 years. In ordering that Mr. Sullivan be permitted to take the February 1976 examination, the majority has disregarded the plain requirements of Rule 3, Section 3 of the Alaska Bar Rules. In doing so, it implicitly has imposed on the Bar a rule similar to Appellate Rule 46 which would permit the court, in its discretion, to relax or dispense with Bar Rule 3 relating to applications for admission. This has been done without adhering to the clear and explicit requirements of Bar Rule 60(b) which provides that rule changes, which include additions to the Bar Rules, be initiated by the Bar and submitted to the court for approval and adoption.

---

13. Even though in the United States Armed Forces and stationed outside of Alaska, I assume that Mr. Sullivan, who was born and reared in Alaska, would maintain his Alaska residence during his term of military service. Alaska Bar Rule 2, § 1(f) requires that an applicant for admission to practice law—

> Be and remain a bona fide resident of the State of Alaska for a period beginning at least 30 days prior to the first day upon

which the bar examination is to be given and continuing through the date upon which the Board certifies the applicant for admission to the Alaska Bar Association[.]

14. *See* footnote 3 of the majority opinion.

15. The word "Committee" is defined in Rule 1, § 1(d) as meaning the Committee of Law Examiners appointed by the Board of Governors of the Alaska Bar Association.

The majority states:

Our deference to the procedures spelled out in the Bar Rules does not have a jurisdictional foundation, however, since this court has the inherent power to intercede at any time in admission matters.

If the court has the inherent power to intercede at any time in admission matters, without regard to the requirements of the Bar Rules, then the situation between the Bar and the court is truly chaotic and devoid of any guidelines. The point I wish to make is that because of the manner provided for adoption and effectuation of the Bar Rules, as shown by Rule 60(b) which I have discussed, there is a clear limitation on the inherent power of this court relating to admissions once the court has approved the Bar Rules governing such matters. These rules allocate the functions between the Bar and this court.

I submit that the court did not have the inherent power to relax or dispense with Bar Rule 3 regarding the time for filing applications for admission to take the bar examination. I would uphold the decision of the Board of Governors, which is contrary to the decision reached by a majority of this court.