291 P.2d 1108

Harry C. HENINGTON, Plaintiff-Appellant,

v.

STATE BOARD OF BAR EXAMINERS; and Bryan G. Johnson, L. C. White, Frank Andrews, Rosser L. Malone, Jr., and W. C. Whatley, who constitutes its members, Defendants-Appellees.

No. 5987.

Supreme Court of New Mexico.

Jan. 3, 1956.

Rehearing Denied Jan. 19, 1956.

Jack Love, Roswell, for appellant.

Richard H. Robinson, Atty. Gen., Fred M. Standley, Asst. Atty. Gen., Paul L. Billhymer, Asst. Atty. Gen., Howard F. Houk, Santa Fe, for appellees.

LUJAN, Justice.

Harry C. Henington, plaintiff (appellant), asked the Board of Bar Examiners to permit him to take the New Mexico bar examination. He tendered his application accompanied by the required examination fee, but did not enclose with said application a diploma or a properly authenticated certificate showing his graduation from an accredited law school, nor a certificate of an attorney of this state that he is a person of good moral character as is provided by rule.

Rule 1, § 2 reads as follows:

"No person, other than those admitted on certificate from other states, shall be granted a license to practice law in this state or shall be entitled to

take examination for admission to the Bar *unless* such person shall have *graduated from a law school approved by the American Bar Association as meeting the standards of that Association.* (§ 18–1–8 of 1953 Compilation.)" (Emphasis ours.)

The Board of Bar Examiners rejected plaintiff's application. On June 8, 1954, the plaintiff filed his complaint in the District Court of Santa Fe County and prayed for an alternative writ of mandamus, seeking to compel the Board of Bar Examiners to examine him as to his qualifications for admission to the bar. On June 14, 1954, the District Court issued an alternative writ of mandamus commanding the Board of Bar Examiners to examine the plaintiff as to his qualifications for admission to the State Bar of New Mexico, and to make an independent investigation of his moral character within thirty days or show cause why it has not done so. An answer was filed by the Board of Bar Examiners, and after a hearing, the alternative writ of mandamus was quashed, and plaintiff appeals.

Under point two plaintiff contends that the so-called "college" rule violates the Fourteenth Amendment to the Constitution of the United States and § 18 of Article 2 of the New Mexico Constitution. We are of opinion and so hold that the educational qualifications required of applicants before they are permitted to practice law in this state does not violate the Fourteenth Amendment or § 18 of Article 2 of our Constitution, either in regard to the clause requiring due process of law, or that providing for equal protection of the laws.

In State v. Rosborough, 152 La. 945, 94 So. 858, the court said:

"* * * But the defendant conceives, and in brief and in argument urges, that he is denied some right guaranteed to him by the Fourteenth Amendment to the Constitution of the United States, and section 2 of article 1 of the Louisiana Constitution of 1921, to wit, that no person shall be deprived of life, liberty, or property without due process of law, or be denied the equal protection of the law.

"As to this, suffice it to say that the right to practice law in the state courts is not a privilege or immunity of a citizen of the United States. In re Lockwood, 154 U.S. 116, 14 S.Ct. 1082, 38 L.Ed. 929.

"For the rest—

"'The practice of law is not a business open to all who wish to engage in it, nor is it a natural right or one guaranteed by the Constitution; but a personal right or privilege limited to a few persons of good moral character, with special qualifications, duly ascertained and certified. It is in the nature

of a franchise from the state conferred only for merit, and is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of court.' "

See, also, Schware v. Board of Bar Examiners of the State of New Mexico, 60 N.M. 304, 291 P.2d 607; Hulbert v. Mybeck, 220 Ind. 530, 44 N.E.2d 830; Seawell v. Carolina Motor Club, 209 N.C. 624, 184 S.E. 540; Kraushaar v. La Vin, 181 Misc. 508, 42 N.Y.S.2d 857; In re Summers, 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795.

And in the case of Rosenthal v. State Bar Examining Committee, 116 Conn. 409, 165 A. 211, 213, 87 A.L.R. 991, the court said:

" * * * The basis of the petitioner's claim upon this phase of the case is that the court could not delegate to the bar examining committee the power to determine the law school in which the petitioner should be required to study in order to be entitled to take the examination for admission. * * In Connecticut, from the earliest times, to prevent the admission of unqualified persons into the practice of the profession, the courts have employed the members of the bar for the purpose of ascertaining the character and qualifications of those applying for membership. This is a reasonable usage. * * * The claim of the petitioner, that to commit to an examining committee the power to determine the educational qualifications of candidates for admission is an unlawful delegation of judicial power, is without force when we consider that from the earliest times in this state, it has been the uninterrupted practice for the court to rely on the bar for investigation as to such matters. * * * The ultimate purpose of all regulations of the admission of attorneys is to assure the courts the assistance of advocates of ability, learning, and sound character and to protect the public from incompetent and dishonest practitioners. * * * While the determination of the qualifications of attorneys to be admitted to practice in our courts pertains to the judicial department, the decisions which must be made in carrying out the procedure established by the rules of the judges to accomplish that end are not judicial in their nature and may properly be vested in the bar examining committee, including the power to determine what law schools shall be approved as furnishing a sufficient educational basis for admitting a candidate to the examination. Nor can it be maintained that the bar examining committee exceeded its powers or acted unreasonably in approving the same

schools as the Council of the American Bar Association on Legal Education and Admission to the Bar. It is a matter of common knowledge that the American Bar Association is a representative body composed of members of the bar from every part of the Union; an organization national in scope, whose purpose is to uphold and maintain the highest traditions of the legal profession. There is nothing in this record to indicate either arbitrary or unreasonable action on the part of the examining committee in approving the same schools as the Council of the American Bar Association on Legal Education and Admission to the Bar."

To the same effect, see, Ex parte State Board of Law Examiners of Florida, 141 Fla. 706, 193 So. 753; State v. Graves, 161 Minn. 422, 201 N.W. 933; In re Bergeron, 220 Mass. 472, 107 N.E. 1107; Ex parte Florida State Bar Association Committee on Legal Education and Admission to the Bar, 148 Fla. 725, 5 So.2d 1; 9 Indiana Law Journal 357.

The case principally relied upon by the plaintiff is that of Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 1070, 30 L.Ed. 220, relating to the regulation of laundries in the city of San Francisco. The ordinance in question in that case was held to be illegal and in violation of the Fourteenth Amendment, because, with reference to the subject upon which it touched, it conferred upon the municipal authorities power, at their will and without regard to discretion in the legal sense of the term, to give or withhold consent as to persons or places for carrying on a laundry, with reference to the competency of the persons applying or the property of the place selected. It was held also that there was a clear and intentional discrimination made against the Chinese in the operation of the ordinance, which discrimination was founded upon the difference of race, and was wholly arbitrary and unjust. It appeared that both petitioners, who were engaged in the laundry business, were Chinese and had complied with every requisite deemed by the law, or by the public officers charged with its administration, necessary for the protection of neighboring property from fire or as a protection against injury to the public health, and yet the supervisors, for no reason other than discrimination against the Chinese, refused to grant the license to the petitioners and to some two hundred other Chinese subjects, while granting them to eighty people who were not such subjects and were working under precisely the same conditions. Such an ordinance, so executed, was held void by the Supreme Court of California. Speaking in that case of the general rights to grant licenses in regard to occupations or trades, Mr. Justice Matthews, in delivering the opinion of the court, said:

"The ordinance, therefore, also differs from the not unusual case where discretion is lodged by law in public officers or bodies to grant or withhold licenses to keep taverns, or places for the sale of spirituous liquors, and the like, when one of the conditions is that the applicant shall. be a fit person for the exercise of the privilege, because in such cases the fact of fitness is submitted to the judgment of the officer, and calls for the exercise of a discretion of a judicial nature."

The rule in question does not grant the Board of Bar Examiners an arbitrary power such as is described in the above mentioned laundry case. In the case at bar, any applicant is permitted to take the bar examination provided he furnishes the Board of Bar Examiners a diploma or a properly authenticated certificate showing his graduation from a law school approved by the American Bar Association. The possession of a legal education is a condition precedent which must be met by all applicants. It is neither an arbitrary or unreasonable one and applies alike to all persons regardless of their religion, race, creed or color. In the instant case the plaintiff is in no position to complain as he is not a graduate from any law school.

■ Under point three plaintiff contends that the so called "moral character" rule violates the due process clause of the state and federal constitutions. This contention is without merit. Rule 2, § 2, reads as follows:

"An applicant for admission must file with the Secretary of the Board of Examiners an application under oath, setting forth the date and place of birth of such applicant, his or her place of residence for seven years immediately preceding the filing of such application and facts showing the qualifications of such applicant, which application *must* be accompanied by the certificate of an attorney of this state that the applicant is a person of good moral character. (§ 18–1–8 of 1953 Compilation.)" (Emphasis supplied.)

Under the above rule an applicant must be shown to be a person of good moral character before he is eligible to take the bar examination. Schware v. Board of Bar Examiners, 60 N.M. 304, 291 P. 607.

The possession of such character is a condition precedent, and the requirement that he furnish the board a certificate from an attorney of this state touching on his moral character is not unreasonable.

■ The right to take an examination to practice law is a qualified right, and one who seeks permission to take such examination must be prepared to satisfy reasonable requirements as to good moral character and training. Schware v. Board of Bar Examiners, supra.

What has here been said disposes of plaintiff's point one.

The judgment will be affirmed.

It is so ordered.

COMPTON, C. J., and SADLER, Mc-GHEE and KIKER, JJ., concur.