Milton M. MOORE, Jr., Plaintiff,

v.

The SUPREME COURT OF SOUTH CAR-OLINA, Chief Justice J. Woodrow Lewis, Associate Justice C. Bruce Littlejohn, Associate Justice Julius B. Ness, Associate Justice William L. Rhodes, Jr., and Associate Justice George T. Gregory, Jr., as Justices of The Supreme Court of South Carolina, and Frances H. Smith, as Clerk of the Supreme Court of South Carolina and in her official capacity as Secretary to the State Board of Law Examiners, Defendants.

Civ. A. No. 77–494.

United States District Court,
D. South Carolina,
Aiken Division.

July 14, 1977.

Milton Moore, pro se.

A. Camden Lewis, Asst. Atty. Gen., Columbia, S.C., for defendants.

## ORDER

CHAPMAN, District Judge.

This matter is before the Court on cross motions for summary judgment. The material facts are undisputed. Plaintiff is a Georgia attorney who desires to practice law in South Carolina; however, he is unable to move his practice to this state because the South Carolina Supreme Court has refused his application to take this state's bar exam. This refusal was based on the "Rules for the Examination and Admission of Persons to Practice Law in South Carolina" which were promulgated by the South Carolina Supreme Court. Rule 5(4) provides:

> No person shall be admitted to the practice of law in South Carolina unless he . . . (4) is a graduate either of the Law School of the University of South Carolina, a law school approved by the Council of Legal Education of the American Bar Association or such other Law School as may be approved by the Supreme Court. . . .

Unfortunately for the plaintiff he graduated from a law school in Georgia which is not approved by the ABA and, therefore, is ineligible to practice law in South Carolina.

Plaintiff filed the instant suit seeking an injunction against the enforcement of Rule 5(4) on the ground that the rule is unconstitutional as depriving him of his rights to "equal protection" and "due process." With respect to his equal protection claim plaintiff first alleges that the rule has no rational basis as applied to him. He concedes that the rule as applied to recent non-lawyer graduates of non-accredited law schools has a rational basis. This concession is made in view of various cases which have specifically held that rules, such as the one in this case, have a rational basis because they are reasonably related to competence to practice law. *Lombardi v. Tauro*, 470 F.2d 798 (1st Cir. 1972); *Hackin v. Lockwood*, 361 F.2d 499 (9th Cir. 1966); *Ostroff v. New Jersey Supreme Court*, 415 F.Supp. 326 (D.N.J. 1976); *Potter v. New Jersey Supreme Court*, 403 F.Supp. 1036 (D.N.J. 1975). Plaintiff argues, however, that these cases are distinguishable because the plaintiff in each of those cases was not a licensed attorney in some state. He sees the wisdom of the rule as applied to non-lawyer applicants for admission to the Bar but feels that the rule is too strict when applied to a practicing attorney in another state who desires to become a member of the South Carolina Bar. In this connection

plaintiff repeatedly points out that many distinguished members of the federal judiciary including the Chief Justice of the United States Supreme Court would be ineligible to practice law in South Carolina because they did not attend ABA approved law schools.

This Court is not persuaded by the distinction which plaintiff seeks to draw. By arguing that the rule is reasonable as applied to some but unreasonable as applied to others plaintiff is asking this Court to rewrite the rule for the South Carolina Supreme Court. According to his argument the rule should read that all persons desiring to practice law in South Carolina must, in addition to taking the bar exam, either graduate from an ABA approved law school *or* be a member of the bar of some other state. Although this Court questions the fairness of Rule 5(4) in light of the fact that a competent attorney may be prevented from practicing in this state, the hardship imposed upon plaintiff by the strict operation of the rule is not a deprivation which reaches constitutional dimensions.

 The states have both a duty and a right to regulate the practice of professions within their borders and federal courts should not interfere with such internal regulation unless the regulations invidiously discriminate against a certain class of citizens or otherwise are in no way reasonably related to ensuring the character and competence of their professionals. The rule in this case was promulgated as one of two basic means of evaluating the competence of those who apply for membership in the South Carolina Bar. One way of testing an applicant's knowledge of the law is to require him to take the South Carolina bar exam. This test has a great deal of value; however, the fact that one passes the bar exam does not necessarily mean that he is qualified to practice law. A person may "read law" or take correspondence courses which may prepare him for the bar exam but which may not prepare him for the practice of law.

The other means of ensuring the qualifications of candidates for admission to the bar is the requirement that they graduate from an ABA approved law school. By imposing this requirement the Supreme Court was clearly seeking assurance that the applicants received some kind of formal legal education with a broader scope than mere preparation for the bar exam. The Supreme Court obviously saw the value of lectures by legal scholars, classroom discussions, the teaching of research skills, and student oral arguments—all facets of a legal education which are not tested by the bar exam.

 This Court will not set aside the law school requirement with respect to nonresident attorneys and merely replace it with another bar exam. The fact that a person who has not graduated from an ABA law school has passed the bar of a sister state and has actually practiced law in that state does not in all cases replace the value of a formal legal education. The Supreme Court has as much right to impose the law school requirement on practicing attorneys as it does to impose it on those who are not attorneys. Rule 5(4), despite the harshness of its application to the plaintiff, has a rational basis, and therefore, is constitutional under the traditional equal protection test.

 Plaintiff apparently saw the weakness of his position under the traditional "rational basis" test and has argued that a newer and stricter "compelling state interest" test applies. In cases where this test is applied, any classification made by the state is strictly scrutinized and is deemed constitutionally invalid unless the state can show that the classification promotes a compelling state interest. Two types of classifications are subjected to this test. A classification which involves race, *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *McLaughlin v. Florida,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964), or alienage, *In re Griffiths,* 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973); *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), is inherently "suspect" and is invalid unless designed to promote a compelling state in-

terest. No suspect classification is involved in the instant case. The classification only distinguishes between those who graduated from ABA approved law schools and those who did not. The other type of classification, which is strictly scrutinized under the compelling state interest test, is one which infringes upon a fundamental right. The main thrust of plaintiff's case is based upon his argument that the classification infringes upon his fundamental right to travel. Plaintiff argues that Rule 5(4) infringes upon his right to travel to South Carolina because he is not allowed to pursue his chosen vocation in this state.

█ The United States Supreme Court has held that the equal protection clause of the 14th amendment may be violated by state statutes which unduly restrict the fundamental right of interstate travel. Each case decided on this point dealt with a durational residency requirement which operated to prevent new residents from voting, *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), or from receiving welfare benefits, *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), or from receiving free nonemergency medical treatment, *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974). These cases held that classifications which "penalize" the right to travel are constitutionally invalid in the absence of a compelling state interest. Although plaintiff seeks to rely on these cases because Rule 5(4) penalizes his movement to South Carolina since it prevents him from practicing law, this reliance is misplaced. There is a crucial factual distinction between this case and the *Shapiro* line of cases which centers on the nature of the classification. A durational residency requirement on its face creates a classification between long term residents and recent migrants. Accordingly, such a classification directly involves the right to travel. The ABA law school requirement, on the other hand, does not draw a distinction between residents and nonresidents or between long term residents and recent migrants. Rule 5(4) applies to residents and nonresidents alike. The classification distinguishes only between those who have graduated from ABA approved law schools and those who have not. In light of this distinction, the *Shapiro* test, which appears to require little more than a chilling effect on the right to travel, is inapplicable. Where, as in the instant case, the classification is totally unrelated to interstate travel, it must not be evaluated under the compelling state interest test unless it effectively prevents travel and not merely discourages it. Rule 5(4) clearly discourages plaintiff from traveling to South Carolina for the purpose of establishing a residence since it prevents him from practicing law. However, it does not operate as an absolute bar to plaintiff's moving to this state. He is free to move to South Carolina if he wishes and engage in business. However, he cannot practice law unless he obtains a degree from an ABA approved law school.

This case is one of first impression with respect to whether a state rule violates the fundamental right to travel when it conditions the taking of the bar exam on graduation from an ABA approved law school. Although no case is directly on point, some courts have addressed the right to travel issue in similar contexts. In *Hawkins v. Moss*, 503 F.2d 1171 (4th Cir. 1974), the plaintiff, a New Jersey lawyer, sought admission to the South Carolina Bar without taking the bar exam. The rule in that case permitted residents of South Carolina who had practiced law in other states to become members of the South Carolina Bar "without examination." However, the rule had a proviso which stated, "Attorneys from states not extending reciprocity on substantially equal terms to attorneys licensed in this State shall not be admitted under this rule." Since New Jersey did not grant reciprocity to South Carolina lawyers, the Supreme Court would not admit plaintiff to practice until he passed the bar exam. As part of his argument that the proviso violated the equal protection clause, plaintiff claimed that it infringed on his fundamental right to travel. The Court, however, rejected this claim. The right to travel issue was extensively discussed by the

Court in language too lengthy to be quoted here; however, some excerpts are particularly pertinent. The Court stated:

The right of federal citizenship as reflected in the "right to travel" and as protected by [the "privileges and immunities" provision] is not to be construed to mean that a citizen carries with him from state to state an absolute right of comity to practice, not a "common occupation", but a profession, which is properly subject to state regulation . . . . . *Id.* at 1178–79.

But here there is no condition on the appellant's actual right to travel; the only condition relates to his right to prac-·tice a constitutionally regulated profession within the state. *Id.* at 1179.

The constitutionality of a reciprocity rule, as it affects the right to travel, was also discussed in *Shenfield v. Prather*, 387 F.Supp. 676 (N.D.Miss. 1974) (three-judge court). The Mississippi rule required that all applicants take a bar exam except those with law degrees from the University of Mississippi or those who had practiced law for five years and were licensed in a state which granted reciprocity to Mississippi lawyers. The Court held in that case "that plaintiff's fundamental right to travel [was] not infringed by the bar admission plan, and that strict judicial scrutiny [was] thus inappropriate." *Id.* at 683. Montana's "diploma privilege" was upheld against constitutional attack in *Huffman v. Montana Supreme Court*, 372 F.Supp. 1175 (D.Mont. 1974) (three-judge court). Under this privilege law graduates of the University of Montana were exempted from the requirement imposed on all other applicants to the bar that they pass the bar exam. With respect to the right to travel aspect of plaintiff's equal protection argument the Court distinguished the *Shapiro* line of cases by finding "a very real and substantial distinction between a diploma privilege and a residence requirement." *Id.* at 1182. In holding that this privilege did not infringe on the right to travel the Court stated:

The diploma privilege does not intend such a "direct impingement" upon inter-

state travel. Nor is the purpose of the diploma privilege to inhibit migration to Montana. Rather, it is designed to ensure competent and morally fit attorneys. Furthermore, the diploma privilege is not a residence requirement.

Certainly there exist numerous statutes in our several states which may affect citizens in their decisions of whether to travel to or reside in those states. For example, a state may impose a sales tax upon specified commodities in trade. A state may also impose speed limits upon drivers of motor vehicles upon that state's public highways. While a sales tax or a speed limit may influence some citizens in their decisions of whether to travel to or reside in our states, those statutes do not constitute a direct impingement upon the fundamental personal right of interstate travel.

Similarly, the diploma privilege does not constitute a direct impingement upon the fundamental right of interstate travel. As evidenced by the uncontested statement of facts, the "plaintiff knew that he would be eligible for admission to the Montana Bar on motion if he graduated from the University of Montana Law School prior to the time he entered the University of Chicago Law School." Yet, the diploma privilege did not in any way impinge upon the plaintiff's right to travel to Illinois to attend school. Nor did the diploma privilege in any way impinge upon the plaintiff's residency in the State of Montana. In short, the diploma privilege, as enacted in Section 93–2002, R.C.M. 1947, like numerous other state statutes, does not directly impinge upon the fundamental right of interstate travel. *Id.* at 1182.

█ As with the diploma privilege in *Huffman*, South Carolina's ABA law school requirement does not infringe the right to travel. Accordingly, since no fundamental right is violated by Rule 5(4), it is not required to be supported by a compelling state interest.

One other constitutional objection has been raised by the plaintiff in this case— that of due process. He claims that Rule 5(4) imposes upon him an "irrebuttable presumption" that he is unqualified to practice law since he is not permitted to prove his competence by taking the bar exam. This argument is made in light of various Supreme Court cases which have held that statutes which create irrebuttable presumptions violate due process unless justified by a compelling state interest. *See Turner v. Dept. of Employment Security*, 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975) (Utah law which made pregnant women ineligible for unemployment benefits for a period from 12 weeks before expected childbirth until six weeks thereafter created an irrebuttable presumption which violated due process); *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (Ohio rule which required pregnant school teacher to take maternity leave five months before expected birth created unconstitutional irrebuttable presumption); *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (rule which presumed students who were nonresidents upon entering college to be nonresidents until they finished was unconstitutional); *United States Dept. of Agriculture v. Murray*, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973) (provision of Food Stamp Act created unconstitutional irrebuttable presumption by providing that households which include a member who had reached his eighteenth birthday and who was claimed as a dependent child for federal income tax purposes by a taxpayer who was not a member of an eligible household were ineligible to receive food stamps); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (Illinois law which did not afford fitness hearing to unwed father upon mother's death but automatically made the children wards of the state created an unconstitutional irrebuttable presumption); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (Georgia law which required uninsured motorists involved in an accident to post sufficient security to cover damages claimed by other victims of accident and which afforded the uninsured motorist no opportunity to show lack of fault or liability was unconstitutional).

Rule 5(4) clearly creates an irrebuttable presumption that applicants to the South Carolina bar, who are not graduates of ABA approved law schools, are unqualified to practice law in this state. However, it is not clear that the use of this presumption per se invokes strict scrutiny analysis. Two recent Supreme Court cases have created uncertainty in this area by appearing to approve of certain kinds of irrebuttable presumptions. In *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Court upheld a provision of the Social Security Act which disallowed survivorship benefits to widows married to or step children of the deceased for less than nine months prior to his death. Although this provision created an irrebuttable presumption that the marriage was collusively entered into in order to receive benefits after the expected death of an ill wage earner, the Court refused to apply strict scrutiny analysis, distinguishing *LaFleur*, *Vlandis* and similar cases.

In *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), the Court was confronted with a constitutional objection to a rule requiring mandatory retirement of policemen at age 50. It upheld the constitutionality of mandatory retirement rules under traditional equal protection analysis finding a rational basis for such rules. It also discussed the strict scrutiny test but found it inapplicable because no fundamental right or suspect class was involved. Unfortunately, despite the fact that mandatory retirement rules create irrebuttable presumptions that the employee is unfit to work after a certain age, the Court did not discuss the due process test. One can only infer that irrebuttable presumptions in mandatory retirement rules comport with due process from the Court's holding that such rules are constitutional.

■ In light of *Salfi* and *Murgia*, it appears that all irrebuttable presumptions

are not subjected to strict scrutiny. This viewpoint finds support in the concurring opinion in *Miller v. Carter*, 547 F.2d 1314, 1319 (7th Cir. 1977), where it is stated:

> I fully recognize that, to say the least, this area of the law continues to evolve. On the one hand, decisions such as *Bell, Stanley, Vlandis, LaFleur* and *Turner* reflect a disdain for irrebuttable presumptions of ineligibility. On the other, the dissenting opinions in each of those cases and the Court's decision in *Salfi* suggest the unworkability of a rule forbidding all conclusive classifications. And as evidenced by the *Murgia* decision, the area involving perhaps the clearest use of conclusive presumptions—mandatory retirement—continues to be tested solely on traditional equal protection grounds. *Id.* at 1329.

In light of the uncertainty in this area, district courts will have to determine whether to subject a particular irrebuttable presumption to strict scrutiny on a case-by-case basis until the Supreme Court establishes some definitive guidelines. With respect to the case at bar, this Court is unwilling to extend the strict scrutiny test to a state rule which imposes certain minimum qualifications for the practice of a profession. If this test were so extended the states would lose all control over the licensing of professional occupations and the federal courts would become quasi-administrative licensing boards. A state could not even require a person who desired to practice medicine to have a medical school degree because such a requirement would create an irrebuttable presumption that a person who did not have such a degree was unqualified. Chief Justice Burger recognized this precise problem in his dissent in *Vlandis* when he stated:

> But literally thousands of state statutes create classifications permanent in dura-

tion, which are less than perfect, as all legislative classifications are, and might be improved on by individualized determinations so as to avoid the untoward results produced here due to the very unusual facts of this case. Both the anomaly present here and the arguable alternatives to it do not differ from those present when, for example, a State provides that a person may not be licensed to practice medicine or law unless he or she is a graduate of an accredited professional graduate school; a perfectly capable practitioner may as a consequence be barred "permanently and irrebuttably" from pursuing his calling, without ever having an opportunity to prove his personal skills.

*Vlandis v. Kline*, 412 U.S. 441, 462, 93 S.Ct. 2230, 2241, 37 L.Ed.2d 63 (1973) (Burger, C. J., dissenting).

 Although no case has precisely held that irrebuttable presumptions established by educational requirements for professionals are exempted from strict scrutiny,[1] this Court has found one case which contains language in dicta to this effect. In *Berger v. Board of Psychologist Examiners*, 172 U.S.App.D.C. 396, 521 F.2d 1056 (1975), the plaintiff was a psychologist who had practiced in the District of Columbia for 14 years. However, in 1971 Congress passed a law which required that all psychologists be licensed but which only permitted issuance of licenses to applicants with a specified educational background. Since plaintiff did not have the formal training required by the statute, he was refused a license and was consequently barred from continuing his practice. The Court declared the statute to be unconstitutional since it contained no "grandfather" clause which would permit plaintiff to demonstrate his competence. This holding was reached by applying the strict scrutiny rule of *Vlandis* and

---

1. Two three-judge district courts have held that ABA law school requirements such as established by South Carolina's Rule 5(4) do not violate due process because they do not create "irrebuttable presumptions" but rather operate as "conditions precedent" to admission to the bar. *Ostroff v. New Jersey Supreme Court*, 415 F.Supp. 326 (D.N.J. 1976); *Potter v. New Jersey Supreme Court*, 403 F.Supp. 1036 (D.N.J. 1975). This Court believes, however, that Rule 5(4) does create an irrebuttable presumption, but that it is nonetheless constitutional.

related cases because the educational requirements of the statute imposed on plaintiff an irrebuttable presumption that he was unqualified to practice psychology. The Court specifically stated, however, that the strict scrutiny test was only applied because of the absence of an adequate grandfather clause. In so limiting its holding, the Court made the following statement which relates to the facts of the instant case:

> Here the irrebuttable presumption of professional incompetence absent a graduate degree is not invalid with respect to future psychologists, but only with respect to current practitioners who have no meaningful grandfather rights. . . .
> Certainly a graduate degree may be required of a practicing psychologist, just as it is required of doctors and lawyers. *Id.* at 1063.

The irrebuttable presumption established by Rule 5(4) is not the type which can justifiably be subjected to strict scrutiny. Accordingly, the rule is constitutional under the due process clause without the necessity of requiring the state to prove a compelling state interest.

Rule 5(4) is clearly rationally related to South Carolina's interest in ensuring the competence of those who apply for admission to its bar. Plaintiff's attempt to apply the stricter "compelling state interest" test cannot succeed. No fundamental right is directly infringed by the rules so as to require strict scrutiny under equal protection analysis and the irrebuttable presumption created by the rule does not require strict scrutiny under due process analysis.

Accordingly, the defendants' motion for summary judgment is granted.

AND IT IS SO ORDERED.