In re Application of Bryan M. HANSEN
to Write the Minnesota Bar
Examination.

No. 48674.

Supreme Court of Minnesota.

Nov. 9, 1978.

Rehearing Denied Dec. 27, 1978.

Bryan M. Hansen, pro se, amicus: Western State University College of Law, John W. Black, Asst. Dean, Fullerton, Cal., for appellant.

Minnesota State Board of Law Examiners, St. Paul, Gislason, Dosland, Malecki, Gislason & Halvorson, C. Allen Dosland, New Ulm, for Minn. State Bd. of Law Examiners.

Jones, Day, Reavis & Pogue, Washington, D. C., amicus.

American Bar Assn., Chicago, Ill., William Spann, Jr., Atlanta, Ga., Erwin Griswold, Washington, D. C., Joseph R. Julin, Gainesville, Fla., and Thomas Cullen, Jr., amicus.

Minnesota State Bar Assn., David R. Brink, Minneapolis, amicus.

KELLY, Justice.

This case comes before the court pursuant to petitioner's request for review of a decision by the State Board of Law Examiners (Board) that petitioner would not be allowed to sit for the Minnesota State Bar examination because he had not graduated from an approved law school as required by Rule II(4)[1] of the Supreme Court Rules for Admission to the Bar. We affirm.

Petitioner, originally a Minnesota resident, is a 1977 graduate of Western State University College of Law (Western State), San Diego, California. Although not admitted to the University of Minnesota Law School, petitioner had the opportunity to attend a number of the 166 law schools accredited by the American Bar Association (ABA). After one month at Marquette University Law School, petitioner decided

---

1. Rule II delineates the general requirements for applicants who wish to sit for the bar examination. It reads as follows:

"No person shall be admitted to practice law who has not established to the satisfaction of the State Board of Law Examiners:

"(1) That he is at least 18 years of age;
"(2) That he is a person of good moral character; *
"(3) That he is a resident of this state; or maintains an office in this state; or has designated the Clerk of the Supreme Court as his agent for the service of process for all purposes;

"(4) That he has graduated from an approved law school; **
"(5) That he has passed a written examination.

"* Character traits that are relevant to a determination of good moral character must have a rational connection with the applicant's present fitness or capacity to practice law, and accordingly must relate to the State's legitimate interest in protecting prospective clients and the system of justice.

"** An approved law school is a law school that is provisionally or fully approved by the Section of Legal Education and Admissions to the Bar of the American Bar Association."

to transfer to Western State Law School. Western State has never applied to the ABA for accreditation. It has been accredited both by the California Committee of Bar Examiners and by the Western Association of Schools and Colleges.

Prior to leaving Marquette petitioner had a conference with the Dean who advised him to remain at Marquette, partly because of its ABA-approved status. Nevertheless, petitioner decided to leave Marquette and enroll at Western State.

In the fall of 1976, when petitioner was a senior student at Western State, he applied to the Board for permission to sit for the July, 1977, bar examination. The Board denied his application because he was not a graduate of an approved law school. According to the Rules for Admission to the Bar, an approved law school is one "that is provisionally or fully approved by the Section of Legal Education for Admissions to the Bar of the American Bar Association."

Thereafter, petitioner requested and was granted a formal hearing before the Board, pursuant to Rule X, Rules for Admission to the Bar.[2] On March 11, 1977, after a full hearing, at which petitioner waived his right to appear, the Board found that he did not satisfy the requirements of Rule II(4) and therefore again denied him permission to sit for the bar examination.

On May 11, 1977, petitioner sought a hearing before this court which was denied on June 7, 1977. His request for a reconsideration of his petition, filed on August 22, 1977, was granted. During this interim period petitioner wrote and passed the California Bar Examination and was admitted to practice in California in January, 1978.

This case presents the following issues for decision:

(1) Whether Rule II(4) of the Supreme Court rules for Admission to the Bar is constitutional; and,

(2) Whether, granting its constitutionality, the requirement of graduating from an ABA-accredited law school should be waived in this case.

■ 1. Petitioner and Western State, as amicus curiae, suggest that Minnesota's rule requiring proof of graduation from an ABA-approved law school as a prerequisite to sitting for the bar examination is unconstitutional under both the due process and the equal protection clauses of the Fourteenth Amendment to the United States Constitution. We disagree. As long as the requirements established by state supreme courts to regulate the practice of law are reasonable ones, they comply with applicable constitutional principles.

All United States Supreme Court decisions concerning state regulation of the practice of law recognize that a state has a substantial interest in the qualifications of those it admits to the legal profession. See, e. g., *In re Griffiths,* 413 U.S. 717, 725, 93 S.Ct. 2851, 2856, 37 L.Ed.2d 910, 917 (1973); *Schware v. Board of Bar Examiners,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796, 801 (1957). As the Supreme Court noted recently in *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572, 588 (1975):

"*  *  *  [T]he States have a compelling interest in the practice of professions within their boundaries, and  *  *  *  as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners  *  *  *. The interest of the States in regulating

**2.** Rule X reads in pertinent part:

"The applicant may appeal to the Supreme Court from any adverse decision of the Board by serving upon and filing with the Director of Bar Admissions and filing in the office of the Clerk of the Supreme Court of the State of Minnesota, within twenty days of receipt by the applicant of the findings, conclusions of law and decision of the Board, a petition for review. The procedure upon the filing of such a petition shall conform to the rules of this Court, so far

as applicable, for review of charges of the Lawyers Professional Responsibility Board. The Board of Law Examiners may employ counsel to present evidence and argument relating to the issues raised by the petition for review in the same manner, within the same times and to the same extent as the Director of Lawyers Professional Responsibility in proceedings pursuant to the rules of this court on Professional Responsibility may do."

lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.' "

Nevertheless, the Court has also recognized that "[t]he practice of law is not a matter of grace, but of right for one who is qualified by his learning and his moral character." *Baird v. State Board of Arizona,* 401 U.S. 1, 8, 91 S.Ct. 702, 707, 27 L.Ed.2d 639, 648 (1971). Thus, while "[a] state can require high standards of qualifications, such as good moral character or proficiency in its law, before it admits an applicant to the bar, * * * any qualification must have a rational connection with the applicant's fitness or capacity to practice law." *Schware v. Board of Bar Examiners,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796, 801.

The test that emerges from these cases is that, despite the strong interest of the applicant in being able to practice law, the state can regulate admission as long as such regulation is reasonably related to its interest in a competent bar. A procedure is reasonable as long as it is not arbitrary and capricious. Only if the complainant is a member of a suspect class or if the procedure at issue violates a fundamental right must the state demonstrate a compelling state interest for its system of regulation to pass constitutional muster. See, e. g., *In re*

*Griffiths,* 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973).

■ The procedure being challenged in this case is Minnesota's requirement that an applicant wishing to take the bar examination demonstrate, among other things, that he graduated from a law school which is provisionally or fully accredited by the American Bar Association.[3] Rule II(4), Supreme Court Rules for Admission to the Bar. Although there have been numerous challenges over the years to educational requirements similar to those of Rule II, both state and federal courts have consistently found such requirements to be constitutional.[4] See, *Lombardi v. Tauro,* 470 F.2d 798 (1 Cir.), certiorari denied, 412 U.S. 919, 93 S.Ct. 2734, 37 L.Ed.2d 145 (1972); *Hackin v. Lockwood,* 361 F.2d 499 (9 Cir. 1966), appeal dismissed, 389 U.S. 143 (1967); *Moore v. Supreme Court of South Carolina,* 447 F.Supp. 527 (D.S.C.1977); *Murphy v. State Board of Law Examiners for the Commonwealth of Pa.,* 429 F.Supp. 16 (E.D. Pa.1977); *Potter v. New Jersey Supreme Court,* 403 F.Supp. 1036 (D.N.J.1975); *Rossiter v. Law Committee of the State Board of Law Examiners,* Civil Action No. C–4767 (D.Colo.1975); *In re Eisenson,* 272 So.2d 486 (Fla.1973); *State ex rel. Ralston v. Turner,* 141 Neb. 556, 4 N.W.2d 302 (1942); *Henington · v. State Board of Bar Examiners,* 60 N.M. 393, 291 P.2d 1108 (1956); *In re Batten,* 83 Nev. 265, 428 P.2d 195 (1967); *In re*

**3.** This requirement is not unusual. According to the brief filed by the American Bar Association, only California and Indiana permit graduates of non-ABA-accredited law schools located outside their borders to take their bar examination, whereas 32 states explicitly limit admission to graduates of ABA-accredited schools and another 9 do so as a matter of practice. Section of Legal Education and Admissions to the Bar, American Bar Association, Law Schools' and Bar Admission Requirements: A Review of Legal Education in the United States—Fall 1976; See, also, 72 Mich.L.Rev. 1134; *Rossiter v. Law Committee of the State Board of Law Examiners,* Civil Action No. C–4767 (D.Colo.1975), slip op. p. 5.

**4.** The only case overturning a state requirement is *Keenan v. Board of Law Examiners of State of N. C.,* 317 F.Supp. 1350 (E.D.N.C. 1970). There the court held that the one-year

residency requirement to take the bar examination was unconstitutional because it created an unreasonable and arbitrary classification, it unnecessarily burdened the right to travel, and it arbitrarily denied petitioners the opportunity to practice their profession. But, see, *Shenfield v. Prather,* 387 F.Supp. 676 (N.D.Miss.1974), and *Huffman v. Montana Supreme Court,* 372 F.Supp. 1175 (D.Mont.1974), aff'd mem., 419 U.S. 955, 95 S.Ct. 211, 42 L.Ed.2d 172 (1974), which upheld the diploma privilege against a right to travel challenge. See, also, *Hawkins v. Moss,* 503 F.2d 1171 (4 Cir. 1974) (reciprocity rule upheld as no infringement on right to travel); *Moore v. Supreme Court of South Carolina,* 447 F.Supp. 527 (D.S.C.1977) (requirement of ABA accreditation does not violate right to travel). Minnesota rules do not require residency. See, footnote 1, *supra.* Thus, *Keenan* has no application here.

*Lorring,* 75 Nev. 330, 340 P.2d 589 (1959); *Application of Schatz,* 89 Wash.2d 604, 497 P.2d 153 (1972); *Rosenthal v. State Bar Examining Committee,* 116 Conn. 409, 165 A. 211 (1933).

In all the decisions upholding a state's educational requirements as a valid prerequisite to admission to the bar, courts have required only that there be a rational reason for the imposition of the requirement. As the court stated in *Application of Schatz,* 80 Wash.2d 604, 497 P.2d 153, 156:

"The policy of the board sets forth a condition precedent to take the bar examination in this state and it applies to all general applicants who are not otherwise qualified under the Admission to Practice Rules. It is correlative and explicit with the ultimate purpose of all regulations for the admission of attorneys to assure the courts the assistance of advocates of ability, learning, and sound character and to protect the public from incompetent and dishonest practitioners."

A similar theme is echoed in *In re Stephenson,* 511 P.2d 136, 139 (Alaska 1973) overruled in other grounds in *Avery v. Board of Governors of Alaska Bar Assoc.,* 576 P.2d 488 (Alaska 1978):

" * * * [T]he public interest in seeing that all members of the bar have an adequate education is a valid basis for an 'accredited schools' test, which insures that each applicant uniformly has performed the minimum required study. * * *

"Moreover, it has been well established that educational standards such as those contained in the Alaska bar rule have a rational connection with an applicant's fitness to practice law. * * * By this means the state may be assured that attorneys have had suitable training by qualified instructors so that as lawyers they will be capable of adequately representing members of the public. The exchange of ideas between classmates and teachers, the legal knowledge, and the sense of ethics acquired through meeting requirements for graduation from an accredited law school are all reasonably related to the state's interest in seeing that those who hold themselves out to the public as attorneys at law, and thus as officers of the court, are properly qualified."

It is also rational for a state supreme court to conclude that the ABA is best equipped to perform the function of accrediting law schools. The Florida Supreme Court explained its reasons for requiring graduation from an ABA-accredited law school in *LaBossiere v. Florida Board of Bar Examiners,* 279 So.2d 288, 289 (Fla. 1973):

"We were persuaded to follow the American Bar Association standards relating to accreditation of law schools because we sought to provide an objective method of determining the quality of the educational environment of prospective attorneys. This was deemed especially necessary because of the rapid growth in the number of educational institutions awarding law degrees. We wished to be certain that each of these many law schools provided applicants with a quality legal education, but we were unequipped to make such a determination ourselves because of financial limitations and the press of judicial business.

* * * * * *

" * * * [W]e share the view of educators that growth in numbers and size must not be allowed to detract from the quality of a student's education. Accordingly, we continue to require that applicants for admission to the Florida Bar Examination be graduates of accredited law schools."

A similar rationale compelled the three-judge federal court in *Rossiter (supra* p. 12) to uphold Colorado's reliance on ABA accreditation:

"No consideration is more critical in evaluating the qualifications of an applicant for admission to the bar than the quality and calibre of his legal education. A good lawyer must possess a complete and workable legal education; developed through exposure to many branches of law, contacts and communication with competent and professional instructors, experience in legal research and writing,

interaction with other students, and access to current and complete research materials. Clearly, these demands compel the establishment and maintenance of standards and systems for the evaluation of institutions which propose to equip new attorneys to join the legal profession. It is also patently obvious that judicial bodies are singularly ill-equipped to bring to bear the resources and expertise necessary to conduct a case-by-case evaluation of United States and foreign law schools. For this reason, it is fortuitous that the American Bar Association, since early in this century, has undertaken to evaluate the law schools which train America's lawyers."

Prior to 1977 the ABA, as a matter of policy, refused even to consider accrediting proprietary law schools. Its opposition stemmed from its belief that the establishment of an educational institution for profit would have to affect negatively the caliber of the education provided to the students. When the goal of a law school is to make money, the reasoning went, the administration will skimp on services, and the students will necessarily suffer. More recently, however, persons within the ABA have challenged this assumption. In response to this pressure the ABA established a committee to study whether the organization should accredit proprietary law schools. The Committee to Study the Accreditation of Proprietary Law Schools recommended, however, that before the Association decided to modify the accreditation process, it should be sure of the incorrectness of its assumption that a school's proprietary status is a shorthand measure of other educational deficiencies. Thus, the Committee recommended that it should permit proprietary law schools to apply for provisional accreditation. If they are able to meet the other ABA requirements, the Association will permanently repeal the standard relating to nonproprietary status.

Petitioner also argues that he received a superior education at Western State and claims that it was much better than what was offered at Marquette, an ABA-accredited institution.[5] In spite of the changes in the ABA rules, he contends that the proscription against proprietary law schools is completely unrelated to a school's potential for educational excellence. However, Western State did not exhaust its remedies by applying for accreditation and testing that proscription before the ABA and subsequently in this court. Petitioner's argument might have carried some weight a few years ago, but has been seriously undermined by recent events.

In order to implement this new position toward proprietary law schools the Council of the Section of Legal Education and Admissions to the Bar resolved on February 12, 1977, that it was willing to grant variances to any proprietary law school that believed it could demonstrate substantial compliance with all other standards for accreditation. On June 18, 1977, it resolved to accept applications for provisional approval from proprietary law schools until June 30, 1979. Despite this waiver, Western State has never applied for provisional accreditation although it was invited to apply on two occasions. Thus, the ABA has not had the opportunity to determine whether it is in substantial compliance with the remaining standards.

Petitioner argues that if Western State were not a proprietary school it would certainly have been accredited, or, alternatively, that it is an excellent school whose excellence goes unrecognized by the ABA because of its proprietary nature. Western State contends that the fact of its accreditation by the California Committee of Bar Examiners and by the Western Association of Schools and Colleges either entitles it automatically to accreditation by the ABA or should cause this court to waive the requirement of ABA accreditation for graduates of Western State. But, as the ABA responds, we have nothing but the bare assertions of petitioner and his law school that Western State offers a quality educa-

---

5. It is, of course, impossible for a student to evaluate the quality of an institution after attending it for only one month. Marquette is accredited by the Supreme Court of Wisconsin and the ABA.

tion and is in substantial compliance with all relevant factors that go into the quality education formula. Because Western State has refused to apply for provisional accreditation, despite ABA requests that it do so, no ABA personnel have visited its campuses to evaluate its programs.[6] Thus, we have no way of knowing whether Western State could have substantially complied with the other ABA requirements for accreditation.

Had the ABA turned down the application of Western State, petitioner could have then approached us with his argument that the ABA standards are arbitrary and capricious. Under existing circumstances, however, there is no record on which we can determine the validity of petitioner's claim.

Clearly, it is reasonable for Minnesota to require proof that an applicant's legal education was of a high quality as a general prerequisite to admission to the bar. Similarly, it is neither arbitrary nor capricious for us to measure the quality of legal education with the same standards as those utilized by the ABA. This is particularly true as we would permit a review by this court if Western State were denied approval after applying. We then could judicially determine the validity of the ABA standards as applied to Western State. Western State has failed to exhaust its remedies by not applying for approval and then if turned down, seeking a review in this court. Thus, petitioner's argument that Rule II(4) is an unconstitutional violation of the due process clause of the Fourteenth Amendment has no merit.[7]

Likewise, we find no violation of the equal protection clause. Under tradi-

tional equal protection analysis classifications will be upheld as long as they are reasonably related to some legitimate governmental purpose. We have already established that the distinction between graduates of accredited and nonaccredited law schools is reasonably related to ensuring a competent bar. Thus, Rule II(4) does not operate to deny petitioner the equal protection of the laws. In an attempt to force us to apply a stricter standard of review than the rational-basis test, petitioner contends that he has some sort of right to practice law in his home state. There is, of course, no merit either to this argument or to his position that Rule II(4) interferes with his fundamental right to travel. See, *Moore v. Supreme Court of South Carolina,* 447 F.Supp. 527 (D.S.C.1977). Our rules do not require residency as an office in this state or appointment of our clerk of court as an agent for service will suffice.

Petitioner also argues that our adoption of Rule II(4) constitutes an unlawful delegation of power from the court to the ABA, a private organization. Petitioner misconstrues the relationship, however. We have not delegated our authority to the ABA but, instead, have simply made a rational decision to follow the standards of educational excellence it has developed. Furthermore, Western State could always petition this court for a review of any adverse decision by the ABA. We have neither the time nor the expertise to investigate individually the special training of an applicant or the program offered by specific law schools, and any attempt by us to do so would be inefficient and chaotic. Thus, it

---

**6.** Both petitioner and his law school have extended to members of this court an invitation to visit Western State in order to permit the court to decide for itself whether the education petitioner received from Western State was educationally sound. It would be more beneficial had they extended this same invitation to the ABA's representatives who have more expertise regarding the components of quality education. If Western State is truly in substantial compliance with ABA requirements, as it implies in its brief, the latter course would have been preferable.

**7.** There is no irrebuttable presumption created either. The requirement of graduation from an

ABA-accredited law school is simply a general educational requirement which all applicants must meet. See, *Rossiter v. Law Committee of the State Board of Law Examiners,* Civil Action No. C–4767 (D.Colo.1975); *Application of Schatz,* 80 Wash.2d 604, 497 P.2d 153 (1972). Moreover, this requirement is clearly related to our recognized interest in ensuring that members of the bar are educated in a competent manner. See, *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572, 588 (1975); *In re Griffiths,* 413 U.S. 717, 725, 93 S.Ct. 2851, 2856, 37 L.Ed.2d 910, 917 (1973).

does not offend the constitution for us to decide to utilize instead standards developed by a nongovernmental body with expertise in the area of legal education. See, *Rossiter v. Law Committee of the State Board of Law Examiners,* Civil Action No. C–4767 (D.Colo.1975); *Rosenthal v. State Bar Examining Committee,* 116 Conn. 409, 165 A. 211 (1935); *LaBossiere v. Florida Board of Bar Examiners,* 279 So.2d 288 (Fla.1973); *Henington v. State Board of Bar Examiners,* 60 N.M. 393, 291 P.2d 1108 (1956); *Application of Schatz,* 80 Wash.2d 604, 497 P.2d 153 (1972). Deciding otherwise would violently interfere with our constitutionally mandated duty to hear and decide cases.

2. Petitioner and Western State both argue that whether or not the court decides that Rule II(4) is unconstitutional, petitioner still deserves to have the requirement waived. Four grounds are advanced to support such a waiver. Petitioner takes the position that because he believes that he is qualified by education and intellect to write the Minnesota bar examination, we should give him the opportunity to prove his qualifications to the court. He advances as a related argument that his passage of the California bar examination, which he describes as the most difficult examination in the country, demonstrates that he possesses the very qualities ABA accreditation is supposed to measure. Thus, we should waive Rule II(4) in his case. He also argues that extenuating circumstances require us to waive the rule. Finally, it is claimed that since other accrediting organizations, like the California Committee of Bar Examiners and the Western Association of Schools and Colleges, are as competent to accredit law schools as the ABA, we should waive Rule II(4) for graduates of law schools accredited by them. Each of these arguments has fatal flaws.

Petitioner fails to realize that once Rule II(4) is labeled as a reasonable attempt to measure the totality of one's law school experience rather than as an irrebuttable presumption, no compelling reason to waive the requirement can be found. Furthermore, it would be impossible for petitioner to amass and present to the court sufficient information about the operation of Western State to permit us to make a reasoned decision on the quality of the education he received there.

Rule II(4) represents our determination that many different experiences help to create a law school education that is likely to provide a potential attorney with the skills necessary to make him an effective member of his profession. Rule II(4) does not, however, contain a complete list of exactly what those experiences are. If pressed, it would be extremely difficult for members of this court to decide which factors are absolutely necessary to the creation of a well-rounded attorney and which are not. By adopting Rule II(4), we have chosen to leave these difficult questions to the accrediting body in whom we have confidence. We also leave to the ABA the task of monitoring institutions to ensure that the standards are maintained even after accreditation is conferred. For these reasons permitting applicants from nonaccredited institutions to appear before either us or the Board, our agent, in order to attempt to demonstrate the educational validity of their law school experiences would serve no useful purpose. It makes much more sense for us to utilize the specialized services of our chosen accrediting agency, the ABA.[8] See, *LaBossiere v. Florida Board of Bar Examiners,* 279 So.2d 288 (Fla.1973).

■ The second basis for petitioner's claim to a waiver is the fact that he has passed the California bar examination and been admitted to practice law in the State

---

8. Petitioner and Western State argue that because some states permit applicants to seek waivers of their rules, Minnesota should do likewise. Illinois, Iowa, Nevada, and Wisconsin have all allowed Western State graduates to take their bar examinations despite the existence of rules that would otherwise preclude them from doing so, and Indiana has repealed its rule requiring graduation from an ABA-accredited institution. While these examples may be instructive, they do not compel us to take a similar position. See, *Application of Schatz,* 80 Wash.2d 604, 497 P.2d 153 (1972).

of California. The mere passage of a bar examination in another state, however, does not necessitate a waiver of the educational rule of the state in which petitioner now seeks to practice. *In re Stephenson,* 511 P.2d 136 (Alaska 1973); *In re Lorring,* 75 Nev. 330, 340 P.2d 589 (1959). We do not believe that passage of a bar examination is necessarily an equivalent measure of the characteristics of legal education which are important in the accrediting decision.

The only extenuating circumstance that petitioner presents is the inconvenience to him of practicing law away from his family. Yet, because he knew that his transfer to Western State could create this hardship, he cannot be heard to complain to us at this time. See, *Application of Saunders,* 295 F.Supp. 263 (D.V.I.1969).

■ Finally, we reject the contention that we should accept the decision of some other accrediting organization that Western State offers its students a quality education. The Western Association of Schools and Colleges is a general regional accrediting organization. According to the ABA, Western State is the only law school that it has accredited. Thus, we do not believe that its expertise is comparable to that of the ABA which specializes in evaluating legal education. Western State is also accredited by the California Committee of Bar Examiners, but we refuse to treat California's decision to accredit Western State as equivalent to our decision to approve only ABA-approved law schools because of the dissimilarity in the way California and Minnesota appear to control admission to the legal profession. California contains many law schools, only some of which are accredited either by the ABA or by the California Committee of Bar Examiners.[9] Even if one is not a graduate of a law school accredited either by California or by

the ABA, however, it is still possible to take the California bar examination. Thus, California appears to utilize its examination as the major form of control over admissions to the bar. The situation in Minnesota is completely different. We use a two-pronged test—graduation from an accredited law school plus passage of the bar examination—to determine whether an attorney should be admitted to practice. Unlike California, we rely primarily on the educational process, and we use the bar examination only to weed out the small number who are unfit to practice law despite their exposure to educational environments of high quality. Given the different functions served by the bar examinations in California and Minnesota, it would be irrational for us to defer to California's decision regarding the quality of the education offered at Western State.[10] We agree with the position taken by the Washington Supreme Court, in response to an argument similar to petitioner's, that "[a] state is not required to subordinate its laws and policies concerning peculiarly domestic affairs and matters involving local sovereignty to the law and policies of other states." *Application of Schatz,* 80 Wash.2d 604, 610, 497 P.2d 153, 157 (1972).

■ Were petitioner able to demonstrate that Minnesota's rules regarding graduation from an ABA-accredited law school came as a complete surprise to him, there might be some support for the argument that principles of fairness require us seriously to consider waiving Rule II(4). Nothing forced petitioner to attend a nonaccredited law school, however. He chose to transfer from an ABA-approved school to a nonaccredited one far away from his home state knowing that this move would pose problems for him if he later wanted to return to Minnesota to practice law. Thus, equity requires no

---

9. All ABA-accredited law schools are automatically given accreditation by the California Committee of Bar Examiners. The Committee also accredits a number of law schools that, for some reason, are not accredited by the ABA.

10. Although this issue was not fully developed during the oral argument, there is some evidence that the accrediting standards used by California are far less stringent than those pro-

mulgated by the ABA. See, Peck, *Minimum Educational Requirements for Admission to the California Bar,* 45 Cal.S.B.J. 831. According to the brief filed by the ABA, in the July 1977 California bar examination, graduates of California-accredited schools had a significantly lower passage rate than those from ABA-accredited schools. Exactly how Western State graduates scored as a group, we have no way of knowing.

waiver here. Were we to grant the waiver as requested, we would have to consider similar requests by students from other non-accredited law schools with chaotic results. Each and every case would have to be decided on its own merits. Undoubtedly claims would be made as in this case that the applicants had a quality education but without any foundation for such claims by experts chosen by this court to pass on that issue.

Affirmed.

YETKA, Justice (dissenting).

While I agree that this case, in my opinion, does not pose a serious constitutional challenge to Rule II(4) of the Supreme Court Rules for Admission to the Bar, I believe the facts of this situation justify our waiving the requirement that the applicant graduate from an ABA-accredited law school.

The avowed purpose of any set of rules for admission to practice is to ensure qualified lawyers to serve the public. While as a general rule it may be true that legal training at an ABA-accredited law school offers the best chance that we will graduate qualified legal scholars, we have no assurance that following that route will attain that lofty objective. Thus, we have exceptions even under the present system, as evidenced by the many petitions for suspension and disbarment that come before this court every month, many of whom are lawyers who have graduated from the best law schools in the country. Our rules should and do allow exceptions, and I believe this to be such a case.

While it is true that Western State is not ABA-accredited, we have these assurances that we would not be taking an undue risk in allowing petitioner to take the exam in Minnesota:

(1) As the majority opinion points out, Illinois, Iowa, Nevada, and Wisconsin have all allowed Western State graduates to take their bar examination, in addition to California.

(2) Applicant has already taken and passed the California Bar Examination, and, in fact, has been invited to join the American Bar Association.

(3) Western State has been accredited by both the California Committee of Bar Examiners and by the Western Association of Schools and Colleges.

(4) While the majority opinion makes much of the fact that the Western Association of Schools and Colleges cannot be said to have much expertise in evaluating legal education because Western State is the only law school that it has accredited, it can also be argued that since California has a number of law schools, both ABA-accredited and non-ABA-accredited, the fact that the Association has accredited Western State is significant proof that the Association was impressed with its credentials.

Until the 20th century, most lawyers learned their profession while working as clerks in the various law firms and were not graduates of law schools at all. Many of the outstanding lawyers of the 18th and 19th centuries were products of such a course. As was brought out in oral argument, the state of Virginia perhaps still permits a legal education to be secured in that manner.

While modern requirements make a more formal training desirable, no rule should be drawn so tightly as to deny application in an exceptional case. The majority argues that petitioner knew when he left an ABA-accredited school to go to Western that he was taking a chance on not being permitted to take our bar examination. So what? Is our objective to punish for nonconformity or to test for competency? Moreover, Hansen may have been told by Western that it fully expected to be accredited prior to his graduation. After all, steps were in motion at that time within the ABA to permit proprietary schools to petition for and receive recognition.

I regret to see Minnesota refuse applicant's petition because there is much to be said for a rule that would allow *any* applicant who has passed the bar examination of *any* other state and has been admitted to practice in that state to take the bar examination of any other state in the union.

Why these barriers? What state or states do we fear are so lenient in their admission standards that we will not permit their lawyers to even take our examination? If our examination is tough enough to screen out the unqualified applicants, we need not have concern for anyone who wishes to take it. And if it is not tough enough to do so, there is little reason for the existence of the bar examination at all.

What precedent do we fear will be set by allowing petitioner to take the examination? I disagree that we would be holding that every applicant from every law school would have the right to take our examination. Our waiving the rule in this case would mean simply that we are holding that an applicant who graduated from a law school approved by the California Committee of Bar Examiners, by the Western Association of Schools and Colleges, and who successfully passed the California Bar Examination, and who is a Minnesota native can take our bar examination—the holding would stand for no more.

There must always be a place in our society for the maverick—the doubter, the one who pushes and questions and challenges, or our society will have lost something, a part of our past that will be irretrievably lost. In our zeal for uniformity we should avoid evolving ourselves into a system like those bureaucratic nations of the old world that sent us so many of their discontented immigrants.

I would waive the rule and allow petitioner to take our bar examination.

OTIS, Justice (dissenting).

I join in the dissent of Mr. Justice Yetka. Western had no opportunity to become accredited prior to 1977, by which time Bryan Hansen was ready to graduate. This is not a case where the ABA has declined to approve a law school, and we are not justified in assuming Western fails to meet ABA standards. All of the evidence strongly suggests Hansen is a highly qualified candidate for admission to our bar. We establish no precedent by permitting him to sit for the examination since the ABA ban on accrediting proprietary schools has now been lifted. This is not a proper case for us to adopt a rigid and inflexible attitude to vindicate our rules.